New Jersey Department of Labor,
Workmen's Compensation Bureau.

WILLIAM C. WALLACE, PETITIONER, v. AMERICAN
CYANAMID CO., RESPONDENT.

Decided June 8, 1942.

For the petitioner, *Avidan & Avidan* (by *Alexander Avidan*).

For the respondent, *Whittemore, McLean & Hand* (by *Clark McK. Whittemore*).

\*　　\*　　\*　　\*　　\*　　\*　　\*

The petitioner claims compensation for a disease of the heart, variously described by some as of luetic and hypertensive origin, by others as luetic aortitis and further as arteriosclerosis. Petitioner claims that he met with an accidental injury on September 11th, 1940, which caused an aggravation of a pre-existing heart condition to the extent of 30% of partial total disability.

The claim of the respondent appears to be that the petitioner did not sustain an accident within the meaning of the Workmen's Compensation Act, and further, that petitioner's condition is the result of a natural progress of the disease unrelated to any trauma or accident.

The testimony submitted on behalf of the petitioner indicates that the petitioner was employed by the respondent for a period of approximately eight years prior to September 11th, 1940, working first as a chef, then in the janitor's

department, and for the past three years prior to September 11th, 1940, in the laundry department. Petitioner's work in the laundry department was entirely of a physical nature for approximately eight hours a day for a five-day week. His work required him to first remove certain soiled overalls onto a hand truck, then pushing the truck to a washing machine; remove the soiled overalls into the washing machine, then pulling out the wet overalls from the washing machine back onto the hand truck, thence to a dryer machine and ultimately to a final place for distribution. Pulling out the wet overalls from the washing machine was described by the petitioner as strenuous work. Pushing the truck, which weighed when loaded approximately 300 pounds, and moved on four small wheels, was also described as strenuous.

On the particular day in question, on September 11th, 1940, the petitioner testified that while he was pushing this hand truck filled with the overalls, one of the wheels was caught with some lint and he was obliged to apply some extra effort to push the hand truck along, at which time he felt this sudden sharp pain in his chest and fell over the hand truck, remaining there for about five or six minutes. This incident occurred at about 11 A. M. in the morning. After the period of rest he emptied the hand truck, reported the incident to his foreman, Mr. Eck, and asked for leave to report to the first aid room, which permission was given him. The petitioner did actually report to the first aid room on the date of September 11th, 1940, at approximately 11 A. M. in the morning, when he was examined by the plant doctor, and after an X-ray was taken he was told to report back at the end of his day's work, which he did. On reporting back at the end of his day's work on September 11th, 1940, he was told that he would not be able to work any more for at least two to three months and there was some suggestion that he had a heart condition. He was then told to report to a Dr. Pogoloff, who treated this petitioner for approximately 26 weeks.

Dr. Appelbaum, who is an expert in diseases of the chest, including the heart, testifying for petitioner, stated that in his opinion the petitioner was suffering from a pre-existing disease of the heart of probable luetic and hypertensive origin;

that the petitioner did sustain an accidental strain on September 11th, 1940, as evidenced by the heart attack and the pains attendant therewith; that the accident of September 11th, 1940, aggravated the pre-existing heart condition and further, that the physical requirements of the petitioner's work likewise contributed to the accidental strain of the heart, which occurred on September 11th, 1940. It was the opinion of ·Dr. Appelbaum that the petitioner's existing permanent disability was 60% of partial total disability, but that in his opinion 30% thereof was attributable to the accident of September 11th, 1940.

The testimony of the petitioner's wife is largely corroborative with some minor misstatements and needs no further elaboration here.

. The testimony in this case also refers to a previous incident which occurred in May, 1940, when the petitioner alleges that he suffered a heart attack while pulling out some wet overalls from the washing machine. This incident is not further considered here by reason of the reliance upon the incident of September 11th, 1940, the last date of employment.

The 'respondent's claim from the medical standpoint appears to be that the petitioner's resulting condition would have resulted from the normal progress of the disease and that the occurrence of September 11th, 1940, did not aggravate .the pre-existing condition.

The respondent first produced Dr. Parsonnett, an expert in diseases of the heart, who testified that the petitioner was suffering from a condition of arteriosclerosis of the heart; that in his opinion the occurrence of September 11th, 1940, did not aggravate the pre-existing condition; that in his opinion stress or strain cannot aggravate a pre-existing heart condition.

Dr. Rowland for the respondent stated that he examined the petitioner on March 19th, 1942; that in his opinion the petitioner was suffering from a condition of luetic aortitis with a possible arteriosclerosis; that this condition would subject the petitioner to a heart attack at most any time, whether at work or at· rest; that the accident of September 11th, 1940, did not aggravate the pre-existing condition for

in his opinion he would not acknowledge that stress or strain can aggravate a pre-existing condition of the heart unless such effort proved fatal.

Drs. Pogoloff and Mangelsdorff, both testifying for respondent, while expressing the opinion that the accident of September 11th, 1940, did not aggravate the pre-existing condition, stated that they were general practitioners, the former specializing, in addition thereto, in venereal diseases, and the latter being the respondent's physician at the plant. Dr. Pogoloff stated that he treated the petitioner for 26 weeks, one treatment a week at a charge of $2 per treatment.

With respect to the disputed controversy as to the causal relation between the accident of September 11th, 1940, and physical effort upon the pre-existing heart condition, I am of the opinion that the petitioner has shown by the preponderance of the evidence that the accident of September 11th, 1940, did aggravate the pre-existing heart condition, and further that the physical effort of the employment did contribute to the ultimate heart condition of the petitioner in this case. That physical strain or effort may be a contributing cause in the aggravation of a pre-existing diseased heart would seem no longer open to doubt under our decided cases. *Hertzberg* v. *Kapo Dyeing and Printing Co. (Department of Labor)*, 19 *N. J. Mis. R.* 201; 18 *Atl. Rep.* (2d) 736. Accord: *Cooke* v. *Cooke & Cole Silk Co.*, 19 *N. J. Mis. R.* 581; 21 *Atl. Rep.* (2d) 853.

I am further satisfied that the petitioner's proofs in this case come within "the settled rule that if the employment 'is one of the contributing causes without which the accident which actually happened would not have happened,' the statutory requirement in this behalf is met. *Geltman* v. *Reliable Linen and Supply Co. (Court of Errors and Appeals)*, 128 *N. J. L.* 443; 25 *Atl. Rep.* (2d) 894, 897.

With respect to the disputed proofs with respect to the accident or the occurrence of September 11th, 1940, the respondent's testimony does not appear to be directly in contradiction to the petitioner's claim.

The foreman, Mr. Eck, stated substantially that he has no recollection of the occurrence of September 11th, 1940.

The same is true for the co-workers, Mr. Charles G. Blair and Mr. Stephen Grabowski. None of these individuals had any definite knowledge of the fact that the petitioner did work on that day or that he had even gone to the first aid room, which was admitted by all. The plant doctor, Dr. Mangelsdorff, admitted receiving the petitioner on September 11th, 1940, at approximately 11 o'clock, receiving these complaints referable to the heart. Dr. Mangelsdorff's records pertained only to the conditions of health of the petitioner.

The doctors produced on behalf of the respondent, who did receive the history of what occurred on September 11th, 1940, all substantially conceded that the petitioner told them of having this heart attack on the day in question, September 11th, 1940, but that their records do not indicate that the petitioner told them of having had an accident or of applying any unusual effort. Accident and unusual effort here appear to be conclusions of law and further, there is no testimony to indicate that the doctors asked the petitioner specifically as to what had occurred and that they wrote down specifically what the petitioner told them had occurred. The effect of their testimony is simply that the petitioner had this severe heart attack while at work. I find no reason to discredit the testimony of the petitioner as to the happening of the incident of September 11th, 1940, merely because he did not relate these historical facts to a treating physician. We may well repeat the quotation of the Passaic County Court of Common Pleas in the case of *Cooke* v. *Cooke & Cole Silk Co.,* *supra:*

"Some people are reticent, and others communicative, about their state of health. The silence of petitioner-appellee appears to have been entirely in character with his temperament and habit."

With respect to the mechanical experiments offered in this case, I am not very much impressed. The attempt to show that the wheels could not be clogged by any amount of lint did not succeed. The wheels produced in court showed that there was a very small amount of clearance between the top surface of the wheel and the lower surface of a steel plate directly above the wheel. The clearance here varied between

⅛ to ¼ of an inch. This would seem to lend credence to the claim of a blockage of the wheel.

With respect to the attempt to show the amount of force required to move the hand truck by the use of a fish scale, the important consideration here is the fact that the petitioner did sustain a heart attack as a result of the application of effort. Our cases are numerous in showing what a small amount of effort may be required to aggravate a pre-existing diseased heart. In the second place I am not satisfied that there is an identity of circumstances between the accident claimed and the experiment shown. In the experiment the truck was pulled whereas in the facts of the case the truck was pushed. Again, what evidence is there to show that the human energy expended by a healthy person which may register a mechanical force of 15-20 pounds, would be the same amount of energy applied by a sickly person in producing the same amount of mechanical force, namely, 15-20 pounds. The human body is not mechanically perfect and therefore a considerable greater amount of energy may be required of a sickly person to produce a mechanical force of 15-20 pounds than would be required of a healthy person, and further, the witness in this case, who pulled the truck, stated that he looked back to record the readings on the fish scale after the truck was in motion. This would not seem to indicate the amount of force that would be required at the precise moment when the truck changes its position from that of a stationary truck to that of a moving one.

Some emphasis is made by the respondent with respect to the signing of a certain form by the petitioner as a basis for collection of health insurance as being considered as an admission against interest almost akin to a bar by estoppel or release. In the first place the petitioner stated he did not read the contents of this printed form which was apparently signed by the employer as well as the petitioner. In compensation law even the signing of a release would be no bar to a meritorious consideration of petitioner's claim. *P. Bronstein & Co., Inc.,* v. *Hoffman,* 117 *N. J. L.* 500; 189 *Atl. Rep.* 121. We are here dealing with an interpretation of facts in an attempt to reach a conclusion as to whether or not this

petitioner sustained an accidental injury or an injury by accident within the meaning of the Workmen's Compensation Law and for that reason much weight cannot be given to the signing of this formal statement.

With respect to the claim for temporary disability, the proof appears undisputed that petitioner was treated for a period of 26 weeks; that the charge for this treatment was $2 a treatment per week or $52. The fact that petitioner has paid premiums under a health insurance policy during this similar period cannot operate to the credit of the respondent in this case. *Barbour Flax Co.* v. *Hagerty (Supreme Court)*, 89 *Atl. Rep.* 919; 85 *N. J. L.* 407.

There has apparently been some differences of opinion as to the law applicable to this case as gathered from the briefs submitted. There has been much decided law in connection with heart cases in the field of compensation and we here set forth those principles and cases which we consider applicable.

"An accidental strain of a heart, even though the heart was previously weakened by disease, may be a compensable injury under our statute when as in this case, the accident arose out of and in the course of the employment." *Bernstein Furniture Co.* v. *Kelly (Court of Errors and Appeals)*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp. (Court of Errors and Appeals)*, 122 *N. J. L.* 494; 6 *Atl. Rep.* (2d) 409.

Nor can the claim for compensation be defeated because of the absence of unusual effort or strain. *Hentz* v. *Janssen Dairy Corp., supra; Ciocca* v. *National Sugar Refining Company of New Jersey (Court of Errors and Appeals)*, 124 *N. J. L.* 329; 12 *Atl. Rep.* (2d) 130, 133; *Molnar* v. *American Smelting and Refining Co. (Court of Errors and Appeals)*, 24 *Atl. Rep.* (2d) 392, 393, where the court said:

"The degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart."

If a pre-existing condition is aggravated by an injury in employment, the injury is compensable and it is not necessary that the accident complained of be shown to be the sole con-

tributing cause to the injury of the employee. *Davis* v. *Lotz* (*Supreme Court*), 126 *N. J. L.* 615; 20 *Atl. Rep.* (*2d*) 602.

The requirement that the injury arise by accident is satisfied if the claimant discharges the burden of proving that the condition complained of, that is, the injury, is related to or affected by the employment, that is to say, if but for the employment it would not have occurred. *Bollinger* v. *Wagaraw Building Supply Co.*, 122 *N. J. L.* 512; 6 *Atl. Rep.* (*2d*) 396; *Tauzman* v. *Shelton Dress Shop* (*Supreme Court*), 11 *Atl. Rep.* (*2d*) 317.

As to the nature of the proof required, our courts have held: "That probability, and not the ultimate degree of certainty, is the test." *Aulen* v. *Johnston* (*Supreme Court*), 178 *Atl. Rep.* 187.

Where the employer seeks to establish the cause of injury as being other than as claimed by the petitioner, the burden of such proof is upon the employer. *Atchison* v. *Colgate & Co.* (*Supreme Court*), 3 *N. J. Mis. R.* 451; 128 *Atl. Rep.* 598; *affirmed*, 102 *N. J. L.* 425; 131 *Atl. Rep.* 921; *George T. Newell, Jr.*, v. *Workmen's Compensation Bureau*, 9 *N. J. Mis. R.* 1123; 157 *Atl. Rep.* 243.

\*     \*     \*     \*     \*     \*     \*

It is \* \* \* ordered that judgment shall be entered in favor of the petitioner and against the respondent.

HARRY S. MEDINETS,
*Deputy Commissioner.*