174 A.3d 973

PHILIP VITALE, PLAINTIFF–RESPONDENT, v. SCHERING–PLOUGH CORPORATION, DEFENDANT–APPELLANT.

A–20 September Term 2016

078294

Argued September 26, 2017—Decided December 11, 2017

236

238

Gavin J. Rooney argued the cause for appellant (Lowenstein Sandler, attorneys; Douglas S. Eakeley, of counsel, and Gavin J. Rooney and Joseph A. Fischetti, on the briefs).

Craig M. Rothenberg argued the cause for respondent (Rothenberg, Rubenstein, Berliner & Shinrod, attorneys; Craig M. Rothenberg, of counsel and on the briefs, and Elizabeth H. Hamlin, on the briefs).

Jay A. Gebauer argued the cause for amicus curiae Allied Barton Security Services, LLC (Fowler, Hirtzel, McNulty & Spaulding, attorneys; Jay A. Gebauer and Quinn M. McCusker, on the brief).

Nancy Erika Smith argued the cause for amicus curiae New Jersey Association for Justice (Smith Mullin, attorneys; Nancy Erika Smith, of counsel and on the brief, and Virginia A. Pallotto, on the brief).

Shalom D. Stone submitted a brief on behalf of amicus curiae New Jersey Civil Justice Institute (Stone Conroy, attorneys).

Richard M. Schall and Bennett D. Zurofsky submitted a brief on behalf of amici curiae National Employment Lawyers Association of New Jersey and New Jersey Industrial Union Council (Schall & Barasch, attorneys for National Employment Lawyers Association of New Jersey and Bennett D. Zurofsky, attorney for National Employment Lawyers Association of New Jersey and New Jersey Industrial Union Council).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, the Court considers an employee's agreement at the inception of his employment to prospectively waive third-party claims against his employer's customers, in the event that he were to sustain injuries in a workplace accident at a customer's facility.

Plaintiff Philip Vitale was hired by Allied Barton Security Services (Allied Barton) as a security guard. When it hired Vitale, Allied Barton required him to execute an agreement entitled "Worker's Comp Disclaimer" (Disclaimer) as a condition of his employment. In the Disclaimer, Vitale agreed to "waive and forever release any and all rights" that he may have had to assert a claim "against any customer ... of Allied Security to which

[Vitale] may be assigned, arising from or related to injuries which are covered under the Workers' Compensation statutes."

Allied Barton assigned Vitale to provide security services at a facility operated by its customer, defendant Schering–Plough Corporation (Schering–Plough). While on duty at that facility, Vitale was seriously injured in an accident. After recovering benefits under the Workers' Compensation Act, N.J.S.A. 34:15–1 to -146, Vitale filed a third-party action, alleging that Schering–Plough negligently maintained its premises and that its negligence caused his injuries. Schering–Plough moved for summary judgment, asserting that Vitale waived his negligence claims against Schering–Plough when he executed the Disclaimer. The trial court held that the Disclaimer was void as contrary to public policy and denied Schering–Plough's motion; the matter proceeded to trial. A jury returned a verdict in Vitale's favor and awarded substantial damages.

An Appellate Division panel affirmed the trial court's denial of summary judgment and the jury's determination of damages. The panel, however, reversed the trial court's determination to bar the jury from considering Vitale's negligence and allocating a percentage of fault to him and remanded for a new trial limited to the issue of liability. We granted certification limited to the question of the Disclaimer's enforceability.

We hold that the Disclaimer contravenes public policy as expressed in two provisions of the Workers' Compensation Act. First, N.J.S.A. 34:15–40 (section 40) provides that an employee's right to workers' compensation benefits does not preclude his or her assertion of common-law personal-injury or wrongful-death claims against a liable third party, and that the employer's workers' compensation carrier may be granted a lien against the employee's recovery in the third-party claim. By virtue of its waiver of any third-party action, the Disclaimer would alter the balancing of interests of the employer, the employee, and a potentially liable party that the Legislature envisioned when it enacted that provision.

Second, subject to an exception that is inapplicable here, N.J.S.A. 34:15–39 (section 39) expressly declares any "agreement, composition, or release of damages made before the happening of any accident" to be contrary to public policy. Section 39 is not limited to agreements to waive workers' compensation benefits; it governs Vitale's pre-accident agreement to forego any third-party claim against Schering–Plough in the event that he sustained a workplace injury on its premises. Section 39's plain language voids the Disclaimer in this case.

Accordingly, we affirm as modified the Appellate Division's judgment, and remand to the trial court for a new trial on the issue of liability.

I.

We derive our account of the facts from the summary judgment record presented to the trial court.

Pursuant to the terms of a Master Vendor Agreement between Allied Barton and Schering–Plough, effective July 27, 2002, Allied Barton agreed to assign supervisory and general security officers to provide security services at Schering–Plough facilities. Under that agreement, the security officers would be Allied Barton employees but would report to work at Schering–Plough.

In August or September 2005, Allied Barton hired Vitale to work as a security officer. On September 27, 2005, Vitale signed the Disclaimer, which provided:

> I understand that state Workers' Compensation statutes cover work-related injuries that may be sustained by me. If I am injured on the job, I understand that I am required to notify my manager immediately. The manager will inform me of my state's Workers' Compensation law as it pertains to seeking medical treatment. This is to assure that reasonable medical treatment for an injury will be paid for by Allied's Workers' Compensation insurance.
>
> As a result, and in consideration of Allied Security offering me employment, I hereby waive and forever release any and all rights I may have to:
>
> —make a claim, or
>
> —commence a lawsuit, or
>
> —recover damages or losses

from or against any customer (and the employees of any customer) of Allied Security to which I may be assigned, arising from or related to injuries which are covered under the Workers' Compensation statutes.

Allied Barton assigned Vitale to Schering–Plough's Kenilworth facility. Between 2005 and 2008, Vitale worked as a security officer. Vitale described his job duties in the position as "[o]bserving, reporting, holding a post, touring the facility or the post area," and monitoring security cameras. In 2008, Allied Barton promoted Vitale to the position of field manager, with responsibilities to train and supervise other Allied Barton officers at the Schering–Plough facility.

One of Vitale's responsibilities as a field manager was to ensure that the security officers under his supervision had appropriate uniforms. Beginning in 2008, the security officers' uniforms were stored in the basement of the main guardhouse of the Kenilworth facility. On ten to fifteen occasions, Vitale descended the stairs to retrieve uniforms for the officers.

While on duty on August 31, 2009, Vitale fell down the stairs that led to the guardhouse basement. Another security officer turned on the light in the stairwell and saw Vitale "laid out at the bottom of the stairs." The officer who found Vitale attributed his fall to the "cluttered" condition of the entrance to the stairwell. Vitale sustained injuries to his head, neck, shoulder, and lower back as a result of the accident.

Vitale filed a claim pursuant to the Workers' Compensation Act in the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation. In a settlement agreement incorporated in an Order Approving Settlement dated March 7, 2011, Vitale and Allied Barton resolved the workers' compensation claim. Vitale, who had received temporary disability benefits at a rate of $549.92 per week for thirty weeks, was awarded "30% of partial total [disability]," allocated among lower back, shoulder, and neurological injuries, for 180 weeks at a rate of $252.90 per week. Vitale did not return to his employment with Allied Barton.

Vitale then filed this action. He asserted that Schering–Plough owed him a duty of care as a business invitee working on its premises, that he was injured because Schering–Plough had negligently maintained its facility and failed to warn him of a dangerous condition, and that he was entitled to compensatory damages.

After obtaining a copy of the Disclaimer in discovery, Schering–Plough moved before the trial court for summary judgment pursuant to Rule 4:46–2(c). It argued that Vitale's negligence claims were barred by the Disclaimer. The trial court denied Schering–Plough's summary judgment motion. The court reasoned that a ruling barring Vitale's claims against Schering–Plough would contravene public policy.

The case was tried before a jury. The trial court granted Vitale's motion for a directed verdict on the question of his comparative negligence. The court did not permit the jury to consider whether Vitale was negligent in descending the stairs without turning on the stairwell light, or to allocate fault to him pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15–5.1 to -5.8. The jury determined that Schering–Plough was negligent and that its negligence was a proximate cause of Vitale's injuries and awarded $900,000 in compensatory damages. The trial court denied Schering–Plough's motion for a new trial.

Schering–Plough appealed. An Appellate Division panel affirmed in part and reversed in part the trial court's judgment. Vitale v. Schering–Plough Corp., 447 N.J. Super. 98, 107, 146 A.3d 162 (App. Div. 2016). The panel affirmed the trial court's denial of Schering–Plough's motion for summary judgment. Id. at 110–18, 146 A.3d 162. It relied on the "joint employer" or "special employee" doctrine, stating that in that doctrine, the Workers' Compensation Act had long recognized and accommodated "the type of relationship between plaintiff, defendant, and Allied Barton." Id. at 118, 146 A.3d 162. The panel considered the Disclaimer to be a contract of adhesion that was substantively unconscionable because it was contrary to public policy. Id. at 109–15, 146 A.3d 162. It also invalidated the Disclaimer on the ground that it was an

exculpatory contract that violated public policy. Id. at 110–14, 146 A.3d 162.

The panel, however, held that because of evidence admitted at trial that Vitale descended the stairs without turning on the stairwell light, the trial court should have instructed the jury to consider whether Vitale's negligence was a proximate cause of his accident and to decide whether a percentage of fault should be allocated to him. Id. at 118–22, 146 A.3d 162. It therefore reversed the trial court's judgment in part and remanded the matter for a new trial on the question of liability. Id. at 121, 146 A.3d 162.

We granted Schering–Plough's petition for certification, in which Schering–Plough raised only the question of whether it was entitled to summary judgment by virtue of the Disclaimer. 228 N.J. 421, 157 A.3d 842 (2016). We denied Vitale's cross-petition for certification, in which he challenged the Appellate Division's grant of a new trial as to liability. 228 N.J. 430, 157 A.3d 847 (2016).

II.

Schering–Plough urges the Court to reverse the Appellate Division's judgment and enter summary judgment in its favor. It argues that because New Jersey courts routinely enforce contracts limiting an employee's rights if they are clear and unambiguous, the Disclaimer should bar Vitale's claim. Schering–Plough asserts that the Disclaimer does not adversely affect the public interest because Vitale had ample notice that his employment as a security guard for Allied Barton's customers entailed a risk of injury. It also contends that the Disclaimer is consonant with the objectives of the Workers' Compensation Act because it preserves the remedies against the employer prescribed by that statute.

Vitale asserts that because the Disclaimer is a contract of adhesion and an exculpatory contract, it must be scrutinized to determine whether it is contrary to public policy. He argues that the Disclaimer contravenes both the deterrent objective of tort law and the protective policies of the Workers' Compensation Act, as expressed in section 39, section 40, and other provisions of the Act.

Amicus curiae Allied Barton contends that the Disclaimer serves the legitimate business objective of shielding Allied Barton's clients from litigation, and notes that the Disclaimer had no impact on Vitale's right to recover the benefits to which he was entitled under the Workers' Compensation Act.

Amicus curiae New Jersey Civil Justice Institute argues that because the Disclaimer protects Allied Barton's clients and ensures that Vitale receives appropriate workers' compensation benefits, it strikes an appropriate balance in the employer-employee-client business relationship. New Jersey Civil Justice Institute contends that the Disclaimer does not create a disincentive to a client company's maintenance of a safe premises because Allied Barton's clients will in any event be motivated to ensure a safe workplace for their own employees.

Amici curiae National Employment Lawyers Association of New Jersey and New Jersey Industrial Union Council assert that Vitale received no valid consideration for his execution of the Disclaimer. They contend that the Disclaimer is void as a matter of public policy because it provides no benefit that compensates the employee for the loss of his third-party claim, and it reduces the client company's incentive to maintain a safe workplace.

Amicus curiae New Jersey Association for Justice notes that the Workers' Compensation Act is remedial social legislation and should therefore be liberally construed. It argues that the Disclaimer violates public policy because it encourages Allied Barton's clients to perpetuate inadequate health and safety practices and affords to Allied Barton an unfair competitive advantage over companies that do not compel their employees to enter into exculpatory contracts.

## III.

### A.

■ The trial court premised its denial of Schering–Plough's motion for summary judgment on its conclusion that the Disclaim-

er was contrary to public policy, and thus unenforceable. We review that legal determination de novo, affording "no deference to an interpretation of law that flows from established facts." State v. Perini Corp., 221 N.J. 412, 425, 113 A.3d 1199 (2015); see also State v. Miles, 229 N.J. 83, 90, 160 A.3d 23 (2017).

### B.

The agreement at the center of this appeal is a private contract, subject to the general principle that parties "are afforded the liberty to bind themselves as they see fit." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 302, 1 A.3d 678 (2010); see also Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681 (1992) ("[T]he basic tenet of freedom of competent parties to contract is a factor of importance." (quoting Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 386, 161 A.2d 69 (1960))). Freedom of contract is, however, "not such an immutable doctrine as to admit of no qualification." Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 361, 138 A.3d 528 (2016) (quoting Henningsen, 32 N.J. at 388, 161 A.2d 69). "The right must recede 'to prevent its abuse, as otherwise it could be used to override all public interests.'" Ibid. (quoting Henningsen, 32 N.J. at 388, 161 A.2d 69).

In this appeal, Vitale contends that the Disclaimer is unenforceable on two closely-related grounds: that it is a contract of adhesion that is unconscionable because it offends public policy, and that it is an exculpatory contract that is contrary to public policy. We consider these arguments in turn.

"[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Rudbart, 127 N.J. at 353, 605 A.2d 681; accord Stelluti, 203 N.J. at 301, 1 A.3d 678. Although a contract of adhesion is not per se unenforceable, a court may decline to enforce it if it is found to be unconscionable. Stelluti, 203 N.J. at 301, 1 A.3d 678.

■ In evaluating a claim that an adhesion contract is unconscionable, courts consider four factors that "focus on procedural and substantive aspects of the contract 'to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement.'" Rodriguez, 225 N.J. at 367, 138 A.3d 528 (quoting Delta Funding Corp. v. Harris, 189 N.J. 28, 40, 912 A.2d 104 (2006)). Those factors are "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." Rudbart, 127 N.J. at 356, 605 A.2d 681; accord Rodriguez, 225 N.J. at 367, 138 A.3d 528; Stelluti, 203 N.J. at 301, 1 A.3d 678.

Vitale makes no claim on appeal that the Disclaimer is procedurally unconscionable. Vitale, 447 N.J. Super. at 111, 146 A.3d 162. Instead, relying on the fourth factor identified in Rudbart, Vitale contends that the Disclaimer is substantively unconscionable because it is contrary to public policy. Thus, in order to decide Vitale's claim that the Disclaimer is an unconscionable contract of adhesion, we determine whether the agreement comports with public policy. See Rodriguez, 225 N.J. at 367, 138 A.3d 528; Rudbart, 127 N.J. at 354–56, 605 A.2d 681.

■ Exculpatory agreements "violate the aims underlying our tort law: deterrence of careless behavior and compensation by the wrongdoer for injuries sustained by victims." Marcinczyk v. State Police Training Comm'n, 203 N.J. 586, 593, 5 A.3d 785 (2010). Such contracts are subjected to "close judicial scrutiny." Stelluti, 203 N.J. at 303, 1 A.3d 678. "[T]o be enforceable, an exculpatory agreement must 'reflect the unequivocal expression of the party giving up his or her legal rights that this decision was made voluntarily, intelligently and with the full knowledge of its legal consequences.'" Id. at 304–05, 1 A.3d 678 (quoting Gershon v. Regency Diving Ctr., Inc., 368 N.J. Super. 237, 247, 845 A.2d 720 (App. Div. 2004)).

 Our law "does not demand a per se ban against enforcement of an exculpatory agreement based on the mere existence of a duty recognized in the common law in respect of premises liability." Stelluti, 203 N.J. at 306, 1 A.3d 678. Instead, we assess whether the contractual elimination of a common-law duty would contravene public policy. Ibid.; see also Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 359–60, 142 A.3d 742 (2016) (finding pre-injury release "that exculpates a business owner from liability for tortious conduct resulting from the violation of a duty imposed by statute or from gross negligence contrary to public policy and unenforceable"); Hojnowski v. Vans Skate Park, 187 N.J. 323, 335, 901 A.2d 381 (2006) (declining, based on public policy reflected in parens patriae doctrine, to enforce parents' waiver of potential personal injury claims on behalf of child).

 "To the extent that any contract of adhesion also would require review to determine whether its enforcement implicates a matter of public interest, that test overlaps, and is subsumed by the more precise analysis employed when assessing whether to enforce an exculpatory agreement." Stelluti, 203 N.J. at 302, 1 A.3d 678. In the setting of this appeal, in which a contract of adhesion that would eliminate a legal duty is challenged exclusively on public policy grounds, the standard of substantive unconscionability that governs a contract of adhesion and the test by which we evaluate an exculpatory agreement converge; the sole question is whether the agreement at issue is contrary to public policy. See ibid.

In the contrasting settings of Stelluti and Rodriguez, we considered the public-policy implications of an allegedly unconscionable contract of adhesion. Stelluti arose from an accident that occurred while the plaintiff was using exercise equipment at a health club. Id. at 294, 1 A.3d 678. In the membership agreement that the plaintiff signed when she joined the health club, she assumed all risk of the health club's negligence, and waived any right "to bring a legal action against the club for personal injury or property damage." Id. at 293, 1 A.3d 678.

We affirmed the determination of the trial court and Appellate Division that the disputed provision was enforceable to bar the negligence claim asserted by the plaintiff, notwithstanding the fact that the provision was a contract of adhesion and an exculpatory agreement. Id. at 300–06, 1 A.3d 678. We reasoned that although there is a public interest in compelling a health club to maintain its facility in a safe condition, public policy does not require the imposition of liability on that club based on ordinary negligence for the recognized risk of injury that arises when an individual uses exercise equipment. Id. at 307–11, 1 A.3d 678.

In Rodriguez, the plaintiff's employment application included a provision by which the employee "agree[d] to bring any employment-related cause of action against the [defendant] employer within six months of the challenged employment action and [to] waive any statute of limitations to the contrary." 225 N.J. at 346, 138 A.3d 528. Had the agreement been enforced, that six-month limitation would have governed claims brought under the Law Against Discrimination (LAD), N.J.S.A. 10:5–1 to -49, which are subject to a two-year statute of limitations under Montells v. Haynes, 133 N.J. 282, 291–92, 627 A.2d 654 (1993). Id. at 356–57, 138 A.3d 528.

We reversed the determination of the Appellate Division, which had affirmed the trial court's dismissal of the employee's action based on the six-month limitations period prescribed by the agreement. Id. at 362–66, 138 A.3d 528. We found the employment agreement's abbreviated limitations period to contravene the LAD's objectives, particularly because that period was incompatible with the election of remedies procedures set forth in the LAD. Id. at 361–65, 138 A.3d 528. We therefore held the statute of limitations provision in the employment agreement to be unenforceable as contrary to the public policy expressed in the LAD. Ibid.

## C.

As we did in Stelluti and Rodriguez, we consider the public-policy implications of the agreement at issue in this appeal.

For more than a century, the Workers' Compensation Act has provided employees injured in the workplace "medical treatment and limited compensation 'without regard to the negligence of the employer.'" Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 584, 116 A.3d 1 (2015) (quoting N.J.S.A. 34:15–7). Pursuant to the Act, "although 'the employer assumes an absolute liability[,] [h]e gains immunity from common-law suit, even though he be negligent, and is left with a limited and determined liability in all cases of work-connected injury.'" Id. at 585, 116 A.3d 1 (quoting Whitfield v. Bonanno Real Estate Grp., 419 N.J. Super. 547, 553, 17 A.3d 855 (App. Div. 2011) (alterations in original)).

If the employee's "injury or death is compensable" pursuant to the Act, "a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the [employee who was] injured or killed, except for intentional wrong." N.J.S.A. 34:15–8; see also Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 459, 45 A.3d 965 (2012) ("The Act's exclusivity can be overcome if the case satisfies the statutory exception for an intentional wrong."); Millison v. E.I. Du Pont de Nemours & Co., 101 N.J. 161, 169–70, 501 A.2d 505 (1985) (same).

The compensation scheme presented "in article 2 of the [A]ct, enters by operation of law into every contract of hiring made in this state unless there be an affirmative rejection of the plan for the alternative common law liability for negligence as modified by the provisions of article 1 of the [A]ct." Gotkin v. Weinberg, 2 N.J. 305, 308, 66 A.2d 438 (1949) (citation omitted). The remedial objective of the Workers' Compensation Act is "to make benefits readily and broadly available to injured workers through a non-complicated process." Tlumac v. High Bridge Stone, 187 N.J. 567, 573, 902 A.2d 222 (2006). We afford the Act "liberal construction in order that its beneficent purposes may be accomplished." Kotsovskova, 221 N.J. at 584, 116 A.3d 1 (quoting Cruz v.

Cent. Jersey Landscaping, Inc., 195 N.J. 33, 42, 947 A.2d 1228 (2008)).

In section 40 of the Workers' Compensation Act, the Legislature addressed the employee's right to file a tort action against potentially liable third parties:

Where a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein. [N.J.S.A. 34:15–40.] [1]

 In enacting section 40, the Legislature did not express a policy in favor of an employee's recovery of damages based on his or her tort claims, or otherwise address the merits of the third-party common-law claim that the statute preserves. Ibid. It sought, however, to regulate "the rights and responsibilities of the several parties concerned in compensation payments where, in the course of his employment, injury or death comes to a workman as the result of the fault of a third party." U.S. Cas. Co. v. Hercules Powder Co., 4 N.J. 157, 165, 72 A.2d 190 (1950); accord Lambert v. Travelers Indem. Co. of Am., 447 N.J. Super. 61, 73, 145 A.3d 1095 (App. Div. 2016).

 "Section 40 permits a workers' compensation insurance carrier to seek reimbursement of benefits it pays when a third[ ]party, other than the employer, caused the employee's injury." Talmadge v. Burn, 446 N.J. Super. 413, 416, 142 A.3d 757 (App. Div. 2016); see also Utica Mut. Ins. Co. v. Maran & Maran, 142 N.J. 609, 613, 667 A.2d 680 (1995). Pursuant to section 40, the Act imposes a lien in favor of the workers' compensation carrier "[i]f the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier" under the Act. N.J.S.A. 34:15–40(b).

---

[1] Section 40 defines "third person" to include "corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals." N.J.S.A. 34:15–40.

■ Thus, "the legislative scheme which emerges is a plan to permit an injured worker to collect worker[s'] compensation benefits and pursue his common law remedy against the third-party tortfeasor." Danesi v. Am. Mfrs. Mut. Ins. Co., 189 N.J. Super. 160, 165, 459 A.2d 686 (App. Div. 1983). The Legislature envisioned that if the employee recovered damages in his or her third-party action, any award to the employee in that action would ameliorate the burden imposed on the employer's workers' compensation carrier, thus promoting the equitable balancing of competing interests that the statutory scheme is designed to achieve. N.J.S.A. 34:15–40.

■ In section 39, the Legislature declared a public policy regarding certain agreements entered into in advance of a workplace accident:

No agreement, composition, or release of damages made before the happening of any accident, except the agreement defined in section 34:15–7 of this title shall be valid or shall bar a claim for damages for the injury resulting therefrom, and any such agreement is declared to be against public policy.

[N.J.S.A. 34:15–39.][2]

That provision addressing pre-accident agreements has been a component of the Workers' Compensation Act since 1913, when section 39's similarly-worded predecessor statute was enacted as an amendment to the Act. L. 1913, c. 174, § 8 (enacted as First Supplement to Compiled Statutes, p. 1651 § 23 (section 23)). The provision has been construed in several decisions to void a pre-accident agreement by which the employee purports to waive his or her right to the workers' compensation benefits authorized by the Act. See Gotkin, 2 N.J. at 308, 66 A.2d 438 (invoking section 39 to invalidate choice-of-law provision in employment agreement that would have deprived employee of workers' compensation benefits under Act); Stroebel v. Jefferson Trucking & Rigging

---

[2] The "agreement defined in section 34:15-7 of this title" refers to an employer and employee's "agreement ... [to] accept the provisions of this article" with respect to the "compensation for personal injuries to, or the death of, such employee by accident arising out of and in the course of employment." N.J.S.A. 34:15-7.

Co., 125 N.J.L. 484, 487, 15 A.2d 805 (E. & A. 1940) (noting that section 23 "restricts the exercise of the parties' contractual power to the statutory agreement" prior to a workplace accident (quoting P. Bronstein & Co. v. Hoffman, 117 N.J.L. 500, 503–04, 189 A. 121 (E. & A. 1936)); Miller v. Nat'l Chair Co., 127 N.J.L. 414, 416–19, 22 A.2d 804 (Sup. Ct. 1941) (applying section 23 to invalidate choice-of-law provision by which employee waived protection of Workers' Compensation Act), aff'd, 129 N.J.L. 98, 28 A.2d 125 (E. & A. 1942); Wallace v. Am. Cyanamid Co., 20 N.J. Misc. 224, 229, 26 A.2d 704 (Dep't Labor 1942) ("In compensation law even the signing of a release would be no bar to a meritorious consideration of petitioner's claim."); Davis v. City of Newark, 19 N.J. Misc. 85, 87, 17 A.2d 305 (Dep't Labor 1941) ("Releases have no legal status in a compensation case."); Castagno v. Lavine Express, 13 N.J. Misc. 88, 89, 176 A. 679 (Dep't Labor 1935) (voiding employment agreement based on statutory bar on employers and employees making "any other arrangement than that set forth in section 2 of the Compensation [A]ct in lieu of the legal liability set forth in section 1"). Those decisions make clear that, unless authorized by N.J.S.A. 34:15–7, a pre-accident employer-employee agreement that prospectively deprives the employee of workers' compensation benefits is contrary to public policy pursuant to section 39.

▮▮▮ The Legislature, however, did not restrict section 39 or its predecessor statute to the waiver of workers' compensation benefits through pre-accident agreements, as it could have by means of a simple modification of the statutory language. Instead, the Legislature chose expansive terminology in section 39. It provided that no pre-accident "agreement, composition, or release of damages," other than an agreement authorized by N.J.S.A. 34:15–7, would bar a claim for "damages"—the same term that appears in section 40 to describe the remedy that an employee would pursue in a third-party claim. See N.J.S.A. 34:15–40(f). As we have frequently noted, "[w]e cannot 'write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment.'" DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039

(2005) (quoting Craster v. Bd. of Comm'rs, 9 N.J. 225, 230, 87 A.2d 721 (1952)). We decline to do so here. We construe section 39's broad language to encompass not only pre-accident agreements waiving the employee's right to assert the statutory claim for workers' compensation benefits, but agreements waiving the employee's right to assert a common-law action for damages against a third party based on a workplace accident, that is addressed in section 40.[3]

Our interpretation of section 39 is consistent with a decision construing section 39's predecessor statute, section 23, shortly after the provision was enacted. In Delaware, Lackawanna & Western Railroad Co. v. Smyth, 93 N.J. Eq. 80, 82–83, 115 A. 65 (Ch. 1921), the court invalidated a pre-accident agreement between an employee and his employer, entitled "Accident Release," by which the employee would have prospectively waived the right to pursue a third-party claim against a common carrier on whose

---

[3] We recognize that our interpretation of section 39 diverges from that of the majority opinion of the Supreme Court of Pennsylvania in Bowman v. Sunoco, Inc., 620 Pa. 28, 65 A.3d 901, 906–08 (2013), the only out-of-state case cited by Schering–Plough in which the court considered a provision analogous to section 39. In Bowman, the majority construed section 204(a) of Pennsylvania's Workers' Compensation Act "to apply only to agreements to bar a claim against an employer." Id. at 908. We find persuasive the reasoning of the dissenting justice in that case, who viewed the provision to be "absolute in its language that 'no agreement, composition or release of damages' shall preclude 'a claim for damages,' and that 'any such agreement is void as against the public policy of the Commonwealth.' " Id. at 911 (Baer, J., dissenting) (quoting 77 Pa. Cons. Stat. § 71(a)). Although Schering–Plough cites three other decisions upholding employer-employee agreements, none of those decisions applies a statutory provision analogous to section 39. See Edgin v. Entergy Operations, Inc., 331 Ark. 162, 961 S.W.2d 724, 727 (1998) (upholding a third-party liability disclaimer despite Ark. Code Ann. § 11-9-108(a), which addresses only an employee's agreement "to waive his or her right to compensation"); Brown v. 1301 K St. Ltd. P'ship, 31 A.3d 902, 905 (D.C. 2011) (interpreting D.C. Code § 32-1517, which voids only "assignment, release or commutation of compensation or benefits due or payable under this chapter," not to govern agreements waiving third-party tort claims); Horner v. Bos. Edison Co., 45 Mass.App.Ct. 139, 695 N.E.2d 1093, 1095 (1998) (upholding employee's agreement to waive third-party claim based on Massachusetts' workers' compensation law, Mass. Gen. Laws ch. 152, § 15, which contains no provision similar to section 39).

premises the employee was assigned to work. Ibid. The court noted that section 23 was "general in its terms, and renders invalid all such agreements or releases as that contained under the caption 'Accident Release.'" Id. at 82. Based on section 23, the court declared the disputed agreement "to be against the public policy of this state." Id. at 83. No later opinion of this Court, or published opinion of the Appellate Division, has construed section 39 to apply only to agreements waiving the right to seek workers' compensation benefits.

In sum, we view sections 39 and 40 of the Workers' Compensation Act to state public policy governing this appeal. Under section 40, the Act does not bar or limit common-law premises liability claims against potentially liable third parties, but provides for a lien on the employee's recovery that may relieve the financial burden of a compensation award on the employer's workers' compensation carrier. N.J.S.A. 34:15–40(b) and (f). To ensure that the statutory scheme properly balances the interests of the employee, the employer, the employer's workers' compensation carrier and any potentially liable third party, the Legislature declared in section 39 that any pre-accident "agreement, composition or release of damages" other than that defined in N.J.S.A. 34:15–7, is contrary to public policy. N.J.S.A. 34:15–39.

## D.

Applying the contract principles set forth in Rudbart, Stelluti, and Rodriguez, we conclude that the Disclaimer is void because it is contrary to the public policy expressed in sections 39 and 40 of the Workers' Compensation Act.[4]

---

[4] We do not concur with the Appellate Division panel's reliance on the "joint employer" or "special employee" doctrine to invalidate the Disclaimer. Vitale, 447 N.J. Super. at 116–17, 146 A.3d 162. Under that doctrine, two employers may be deemed liable to an employee for workers' compensation benefits, and the employee is consequently barred from pursuing a common-law negligence action against either employer. Volb v. G.E. Capital Corp., 139 N.J. 110, 116–18, 651 A.2d 1002 (1995); New Amsterdam Cas. Co. v. Popovich, 18 N.J. 218, 225,

The Disclaimer, by which Vitale waived "any claims arising from or related to injuries which are covered under the Workers' Compensation statutes," constitutes an "agreement, composition or release of damages made before the happening of any accident." N.J.S.A. 34:15–39. It is not an agreement authorized by N.J.S.A. 34:15–7, and is therefore not within the sole exception identified in section 39. Ibid. Accordingly, the Disclaimer is in the category of employment agreements that the Legislature has declared to be "against public policy." Ibid.

Moreover, were the Disclaimer to be enforced, it would undermine the Legislature's purpose when it enacted section 40 of the Workers' Compensation Act. It would not only deprive Vitale of the opportunity to pursue a common-law action against a potentially culpable third party, but would eliminate Allied Barton's workers' compensation carrier's lien on any damages awarded to Vitale in his third-party action. The Disclaimer would disrupt the balancing of interests that the Legislature sought to achieve when it incorporated section 40 into the statutory scheme.

Accordingly, we concur with the trial court's determination that the Disclaimer is unenforceable because it contravenes public policy. We hold that the trial court properly denied Schering–Plough's motion for summary judgment under Rule 4:46–2.

### IV.

We affirm as modified the judgment of the Appellate Division, and remand for a new trial on the issue of liability.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ–VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.

---

113 A.2d 666 (1955). In this appeal, no party asserted before the trial court, or contends on appeal, that Schering–Plough was Vitale's "joint employer" for purposes of the Workers' Compensation Act, and that doctrine is accordingly irrelevant.