**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2102-22

GERALD FAZIO JR.,

    Plaintiff-Appellant,

v.

ALTICE USA, CABLEVISION,
OPTIMUM, and OPTIMUM
MOBILE,

    Defendants-Respondents.

_____

Submitted February 27, 2024 – Decided July 10, 2024

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5522-22.

Law Offices of Dana Wefer, LLC, attorneys for appellant (Dana Wefer, on the briefs).

Lester Schwab Katz & Dwyer, LLP, attorneys for respondents (Alfredo J. Alvarado, on the brief).

PER CURIAM

Plaintiff, Gerald Fazio, Jr., who purchased a cellphone and service plan from defendants, appeals the trial court order dismissing his discrimination complaint against defendants and compelling arbitration. Plaintiff contends defendant violated his rights under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, by refusing him service when he objected to wearing a mask in defendants' phone store during the COVID-19 pandemic. Upon defendants' motion, the trial court dismissed plaintiff's complaint and ordered mandatory arbitration pursuant to the sales and service agreement executed by the parties. Plaintiff appealed, and we affirm.

I.

We summarize the relevant facts from the undisputed record. Some years' prior to the mask incident, Gerald Fazio, Jr. was injured in an accident, resulting in temporary quadriplegia. After rehabilitation, Fazio regained some use of his arms and legs, but had significant physical limitations. One of those limitations was to his respiratory system. While the record contains no medical reports to support his injury claims, Fazio alleges in his merits brief that his diminished respiratory function prevented him from wearing a mask on the day he entered defendants' phone store in 2021.

2

On November 20 and 25, 2019, Fazio purchased a cell phone and cellphone service. Fazio's November 20 visit initiated his mobile phone service. Defendants provided him a receipt which stated in pertinent part: "A copy of all documents and agreements-including Terms and Conditions, AutoPay, handset insurance, . . . will be sent electronically to the email address you provided during account creation." Dency Gonzalez, defendants' Senior Director of Business Process Management, described the above set of "documents and agreements" to be emailed to Fazio as a "Customer Service Agreement."

On November 25, 2019, Fazio returned to the store, signing a retail sales agreement to purchase a cell phone to use with the service he started on November 20.

The retail agreement stated in pertinent part:

> DISPUTES. THIS AGREEMENT IS SUBJECT TO A BINDING ARBITRATION PROVISION THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL TERMS. THIS PROVISION INCLUDES A WAIVER OF CLASS ACTIONS AND PROVISIONS FOR OPTING OUT OF ARBITRATION. A FULL COPY IS CONTAINED IN THE SERVICE AGREEMENT UNDER THE HEADING "BINDING ARBITRATION" WHICH TERMS ARE INCORPORATED BY REFERENCE.

3

. . . .

9. ELECTRONIC ACCESS TO AGREEMENT/OTHER COMMUNICATIONS. By signing below, you acknowledge that you have access to Altice Mobile's Website at https://www.alticemobile.com/Legal/prlvacy, where a copy of this Agreement and related privacy and other communications will be available to you. You also consent to receive account-related communications in an electronic format, such as by email. If you want a paper copy of this Agreement, you may ask your sales representative to email or print a copy for you.

The "Customer Service" agreement referenced binding arbitration in two places. First, page one provided a notice that the terms of service contained a binding arbitration agreement, which included a waiver of jury trial and instructions of how to opt out of arbitration. Next, paragraph twenty-five, entitled, "Binding Arbitration," stated in pertinent part:

Please read this section carefully. It affects your rights. Any and all disputes arising between You and Altice, including its respective parents, subsidiaries, affiliates, officers, directors, employees, agents, predecessors, and successors, shall be resolved by binding arbitration on an individual basis in accordance with this arbitration provision. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: Claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; Claims that arose before this or any prior Service Agreement; and Claims that may arise after the termination of this Service Agreement.

4

A-2102-22

. . . .

> Resolving Your dispute with Altice through arbitration means You will have a fair hearing before a neutral arbitrator instead of in a court before a judge or jury. YOU AGREE THAT BY ENTERING INTO THIS SERVICE AGREEMENT, YOU AND ALTICE EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION.

The rest of paragraph twenty-five detailed other arbitration aspects, including but not limited to: the scope of eligible issues; designation of the American Arbitration Association to administer disputes; and various procedural considerations.

Finally, paragraph fourteen of the "Customer Service" agreement expressly conditioned defendants' phone service on agreement by Fazio to "use electronic signatures . . . [and] receive electronic records . . . ."

Fazio's two in-store visits to start his service, purchase his phone, and sign his retail service agreement occurred several months before the onset of the COVID-19 pandemic. In June 2021, while our state was still in the throes of the pandemic, Fazio experienced technical difficulties with his cellphone. He visited defendants' cellphone store site in Oakland for in-person customer service to repair his phone. Store personnel declined to serve him in the store

because he was not wearing a mask, citing store policy. They asked him to leave. When Fazio stated that he could not wear a mask for medical reasons and refused to leave the premises, the staff called police, who escorted him from the premises. The police then went back into the store and obtained the replacement part that Fazio needed, completing his transaction for him.

Fazio filed suit in October 2022, alleging defendants discriminated against him in violation of the NJLAD, and negligent infliction of emotional distress. The trial court granted defendants' motion to dismiss for failure to state a claim and compel arbitration, making findings. First, the court found that the retail and service agreements were not contracts of adhesion, also finding that Fazio could have gotten phone service elsewhere. Next, the court found the service agreement arbitration clause was clear and unambiguous.

Finally, the court addressed plaintiff's main argument: there could be no meeting of the minds on the arbitration clause contained in the customer service agreement because he never received it. The court found the parties entered into an agreement, as represented by the terms and conditions of the customer service and retail service agreements. It stated:

> Neither party has presented to this Court concrete evidence on this issue; however, the Court does note that these are transactions that take place by the thousands every day, via email, and that the service

A-2102-22

provided, the phone provided[,] and the loan provided clearly would not have continued, in this Court's opinion, in the absence of . . . agreement between the . . . parties . . . .

Considering the record, the court found "there is absolutely strong evidence that the goods and services between the parties were supplied by the defendant to the plaintiff, thus making the arbitration clause . . . binding." The trial court found that Fazio's claim that he was discriminated against because he refused to wear a mask in defendants' retail store during the pandemic was within the scope of the arbitration clause in the customer service agreement. Consequently, the court ordered the parties to arbitration.

On appeal, Fazio first contends there was no mutual assent to the arbitration clause because he never saw the customer service agreement defendants allegedly emailed him after November 20, 2019. Next, he argues that even if the clause were valid, his LAD claim falls outside the scope of arbitration. Finally, he posits that the arbitration clause is unenforceable because the customer service agreement is a contract of adhesion.

II.

We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) ("[W]e need not

defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive" (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019))). We owe no special deference to the trial court's interpretation of an arbitration provision, which we view "with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, represent a legislative choice "to keep arbitration agreements on 'equal footing' with other contracts." Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 441 (2014)). Under both statutes, "arbitration is fundamentally a matter of contract," and should be regulated according to general contract principles. Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (quoting Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (2022)).

"An agreement to arbitrate . . . 'must be the product of mutual assent,'" and "requires 'a meeting of the minds.'" Id. at 316 (quoting Antonucci, 470 N.J. at 561). "'[T]o be enforceable, the terms of an arbitration agreement must be clear,' and the contract needs to explain that the agreement waives a person's

right to have their claim tried in a judicial forum." Ibid. (quoting Antonucci, 470 N.J. at 561).

III.

Fazio first contends that there was no mutual assent between parties, making the arbitration clause in the customer service agreement unenforceable. We are not persuaded.

Fazio entered into two agreements with defendants within five days in November 2019. The record shows he first agreed to purchase phone service on November 20, 2019, and it also shows that defendants emailed a "Customer Service Agreement" to him. The record also shows that days later, on November 25, 2019, Fazio signed a "Retail Services Agreement" to purchase a cell phone connected to defendants' service. The retail agreement included a "notice of arbitration," and referenced the arbitration clause contained in the customer service agreement. Fazio had utilized defendants' cell services for approximately nineteen months when he entered defendants' store to correct technical problems with his phone. Fazio posits that, because he searched his records, including his home email, and could not locate the customer service agreement, there was no mutual assent. This argument has no merit.

While the record shows neither party produced the emailed copy of the customer service agreement, the record also shows that the parties' conduct evidenced a binding agreement. Defendants continuously supplied cellphone service to Fazio, who used it uninterrupted for nearly two years, until he had technical difficulties with his phone. Even on the day of the mask incident, defendants provided Fazio with the cellphone part he needed to fix his cellphone. Neither party ever acted as if there was no agreement. We agree with the trial court's finding and conclude a binding agreement between the parties existed.

Having found mutual assent, we briefly turn to the scope of the arbitration clause. The pertinent portion of the arbitration clause reads as follows: "[c]laims arising out of or relating to any aspect of the relationship between [the parties], whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory . . . ." Fazio's claims fit squarely within the clear and plainly written terms of the arbitration clause, as he alleged violation of the NJLAD and negligent infliction of emotional distress. Because we consider arbitration "fundamentally a matter of contract," we apply "general contract principles." Ogunyemi, 478 N.J. Super. at 315. Applying those principles here, we conclude

A-2102-22

that Fazio's complaint falls within the scope of the arbitration clause in the customer service agreement, and his argument falls flat.

Finally, we consider whether the agreement was a contract of adhesion. A contract of adhesion is one that "is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Vitale v. Schering-Plough Corp., 231 N.J. 234, 246 (2017) (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344 (1992)). "Although a contract of adhesion is not per se unenforceable, a [judge] may decline to enforce it if it is found to be unconscionable." Ibid. The customer service agreement and the retail service agreement evidence characteristics of contracts of adhesion. They were form agreements that fit our Court's definition as "take-it-or-leave-it" adhesion contracts. Ibid. Nothing in the record suggests that Fazio was afforded an opportunity to negotiate terms before assent. However, an agreement found to be an adhesion contract can be enforced if it is not unconscionable. Ibid.

When determining whether an adhesion contract is unconscionable, we evaluate four factors. Those factors include "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract."

11

Rudbart, 127 N.J. at 356. The first three factors speak to procedural unconscionability, and the last factor speaks to substantive unconscionability. Rodriquez v. Raymours Furniture Co., Inc., 225 N.J. 343, 367 (2016).

Applying the four-factor test to this cellphone service agreement, a relatively commonplace consumer service, we focus on the economic compulsion factor. Fazio engaged in the discretionary purchase of a cell phone and related services. He was free to accept or reject defendants' services. He could have taken his business to another cell phone company, or he could have taken more time to read the agreements before signing. There is no procedural unenforceability. Given the ubiquitous and fungible nature of cellphone contracts, we discern no substantive public policy barrier to enforcement.

We conclude the arbitration clause was properly enforced by the trial court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-2102-22