SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**New Jersey Transit Corporation v. Sandra Sanchez (A-68-18) (082292)**

**Argued September 24, 2019 -- Decided May 12, 2020**

**PER CURIAM**

New Jersey Transit Corporation (New Jersey Transit) sought to recover workers' compensation benefits paid to an employee, David Mercogliano, who sustained injuries in a work-related motor vehicle accident. It sued the individuals allegedly at fault in the accident, defendants Sandra Sanchez and Chad Smith, pursuant to N.J.S.A. 34:15-40, a provision of the Workers' Compensation Act that authorizes employers and workers' compensation carriers that have paid workers' compensation benefits to injured employees to assert subrogation claims. The Court considers whether that subrogation action was barred by the Auto Insurance Cost Recovery Act (AICRA).

Mercogliano was acting in the course of his employment when the New Jersey Transit vehicle he was driving was struck from the rear by a vehicle driven by defendant Sanchez and owned by defendant Smith. At the time of his accident, Mercogliano was insured under a standard automobile policy, under which he was entitled to personal injury protection (PIP) and other benefits. New Jersey Transit's workers' compensation carrier paid Mercogliano workers' compensation benefits. Mercogliano neither sought nor received PIP benefits under his automobile insurance policy in connection with his accident.

New Jersey Transit filed a complaint seeking to "recoup workers' compensation benefits pursuant to N.J.S.A. 34:15-40(f)." Defendants pled as an affirmative defense that New Jersey's no-fault insurance statutory scheme barred New Jersey Transit's subrogation claim and moved for summary judgment. The trial court granted defendants' motion, ruling that New Jersey Transit could not assert a claim based on economic loss. It noted that N.J.S.A. 39:6A-2(k) defines economic loss for purposes of AICRA to mean "uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses." In the trial court's view, because New Jersey Transit's workers' compensation carrier paid benefits for all of Mercogliano's medical expenses and lost income, he had no "uncompensated loss of income or property," and thus sustained no economic loss for purposes of AICRA. The trial court relied on Continental Insurance Co. v. McClelland, 288 N.J. Super. 185 (App. Div. 1996), and policy considerations in reaching its decision.

1

The Appellate Division reversed that judgment. 457 N.J. Super. 98, 113 (App. Div. 2018). The Appellate Division agreed with New Jersey Transit that its subrogation action arose entirely from "economic loss comprised of medical expenses and wage loss, not noneconomic loss." Id. at 112. However, it rejected the trial court's view that an employer's or workers' compensation carrier's subrogation claim based on benefits paid for economic loss contravenes AICRA's legislative intent. Id. at 107-12. The Appellate Division noted that in the Workers' Compensation Act, the Legislature imposed on an employer the obligation to pay workers' compensation benefits for an accident arising from an injured workers' employment, and that N.J.S.A. 34:15-40 "gives the workers' compensation carrier an absolute right to seek reimbursement from the tortfeasor for the benefits it has paid to the injured employee." Id. at 107.

The Appellate Division acknowledged that N.J.S.A. 39:6A-6's collateral source rule places the primary burden on the employer's workers' compensation carrier to compensate an employee injured in the course of employment, in the event that only workers' compensation benefits and PIP benefits are available sources of reimbursement. Id. at 110-11. It noted, however, that "where both workers' compensation benefits and the proceeds of a tort action have been recovered, the tort recovery is primary" under N.J.S.A. 34:15-40. Id. at 111. The Appellate Division therefore concluded that the collateral source rule posed no obstacle to New Jersey Transit's claim. Id. at 111, 113.

The Appellate Division viewed Continental to have been rejected by subsequent Appellate Division jurisprudence, and declined to follow it. Id. at 109-10. The court instead invoked Lambert v. Travelers Indemnity Co. of America, 447 N.J. Super. 61, 67, 75 (App. Div. 2016), which identified the Workers' Compensation Act -- not AICRA -- as the governing law for subrogation claims based on workers' compensation benefits paid to workers injured in motor vehicle accidents in the course of their employment. Id. at 111-12. The Appellate Division therefore reversed and remanded the matter for the entry of partial summary judgment in favor of New Jersey Transit. Id. at 113.

The Court granted defendants' petition for certification. 237 N.J. 317 (2019).

**HELD:** The judgment of the Appellate Division is affirmed by an equally divided Court.

**JUSTICE PATTERSON, CONCURRING, joined by CHIEF JUSTICE RABNER and JUSTICES FERNANDEZ-VINA,** notes that the Workers' Compensation Act provides employers or carriers with a mechanism through which to recover benefits paid when the injuries that necessitated those benefits were caused by a third party, N.J.S.A. 34:15-40, which limits the employer's or carrier's right of recovery to the same "action that the injured employee . . . would have had against the third person," in accordance with traditional principles of subrogation. Justice Patterson next traces the history of AICRA and observes that, under N.J.S.A. 39:6A-6, when an employee injured in a work-related accident is entitled to benefits under the Workers' Compensation Act, that statute

-- not AICRA -- provides his or her primary source of recovery for medical expenses and lost wages. Justice Patterson stresses that, when it enacted AICRA, the Legislature did not amend the Workers' Compensation Act to eliminate or circumscribe the statutory right of subrogation in cases involving injuries to employees in motor vehicle accidents. Justice Patterson reviews relevant case law and notes that Continental was not followed in later Appellate Division decisions. Noting that the trial court will have the discretion upon remand to expand the record and resolve any factual dispute about whether all payments were economic loss, Justice Patterson confines analysis to workers' compensation subrogation based on payments made for economic loss. Justice Patterson explains that, to the trial court, the act that gave rise to New Jersey Transit's subrogation claim -- its payment of benefits to Mercogliano under N.J.S.A. 34:15-15 and N.J.S.A. 34:15-12(a), (c) -- simultaneously defeated that claim, because it left Mercogliano with no "uncompensated" loss. Justice Patterson discerns no evidence that the Legislature intended to bar a workers' compensation subrogation claim by virtue of the very benefits that created that claim in the first place and instead concludes, like the Appellate Division, that Mercogliano suffered an economic loss in the form of medical expenses and lost wages, and that New Jersey Transit paid him benefits for that economic loss. Finally, Justice Patterson explains why Lambert and two other Appellate Division cases are more persuasive than Continental as applied to this case.

**JUSTICE ALBIN, DISSENTING, joined by JUSTICES LaVECCHIA and SOLOMON,** expresses the view that, when a driver is involved in a work-related automobile accident and his economic costs are recoverable under either his private automobile insurance carrier's personal injury protection (PIP) policy or under his employer's workers' compensation scheme, New Jersey's no-fault automobile insurance system makes the workers' compensation carrier primarily responsible for reimbursing those costs. When an injured driver's economic losses are "collectible" under his PIP policy but paid by his employer's workers' compensation carrier, Justice Albin explains, the no-fault system prohibits a workers' compensation subrogation action against the tortfeasor or the tortfeasor's automobile liability insurance carrier. See N.J.S.A. 39:6A-6, -12. In Justice Albin's view, allowing the workers' compensation carrier here to sue the tortfeasors or their automobile insurance carrier in a subrogation action permits the very outcome the Legislature intended to foreclose through adoption of no-fault insurance -- more litigation and greater financial burdens on the automobile insurance system.

**The members of the Court being equally divided, the judgment of the Appellate Division is AFFIRMED.**

**JUSTICE PATTERSON filed a concurrence, in which CHIEF JUSTICE RABNER and JUSTICE FERNANDEZ-VINA join. JUSTICE ALBIN filed a dissent, in which JUSTICES LaVECCHIA and SOLOMON join. JUSTICE TIMPONE did not participate.**

SUPREME COURT OF NEW JERSEY
A-68 September Term 2018
082292

New Jersey Transit Corporation,
a/s/o David Mercogliano,

Plaintiff-Respondent,

v.

Sandra Sanchez and Chad Smith,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
457 N.J. Super. 98 (App. Div. 2018).

| Argued | Decided |
|--------|---------|
| September 24, 2019 | May 12, 2020 |

John V. Mallon argued the cause for appellants (Chasan
Lamparello Mallon & Cappuzzo, attorneys; John V.
Mallon, of counsel and on the briefs, and Ryan J.
Gaffney, on the briefs).

Shawn C. Huber argued the cause for respondent (Brown
& Connery, attorneys; Shawn C. Huber, on the brief).

Richard J. Albuquerque argued the cause for amicus
curiae New Jersey Association for Justice (D'Arcy
Johnson Day, attorneys; Richard J. Albuquerque and
Dominic R. DePamphilis, on the brief).

The judgment of the Appellate Division is affirmed by an equally divided Court.

JUSTICE PATTERSON, concurring.

This appeal arises from an action brought by plaintiff New Jersey Transit Corporation (New Jersey Transit) pursuant to N.J.S.A. 34:15-40, a provision of the Workers' Compensation Act that authorizes employers and workers' compensation carriers that have paid workers' compensation benefits to injured employees to assert subrogation claims. New Jersey Transit sought to recover workers' compensation benefits paid to an employee, David Mercogliano, who sustained injuries in a work-related motor vehicle accident. It sued the individuals allegedly at fault in the accident, defendants Sandra Sanchez and Chad Smith.

Defendants argued that New Jersey Transit's subrogation action was barred by the Auto Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35. Defendants asserted that because Mercogliano had elected the limitation-on-lawsuit option permitted by N.J.S.A. 39:6A-8(a), and sustained no permanent injury, AICRA barred New Jersey Transit's claim.

The trial court granted summary judgment in favor of defendants and denied New Jersey Transit's cross-motion for partial summary judgment. It barred New Jersey Transit's subrogation action on the grounds that Mercogliano sustained no economic loss as defined in AICRA and that New Jersey Transit's subrogation claim would subvert AICRA's goals.

The Appellate Division agreed with New Jersey Transit that the workers' compensation benefits paid to Mercogliano related only to economic loss. N.J. Transit Corp. v. Sanchez, 457 N.J. Super. 98, 112 (App. Div. 2018). It concluded that New Jersey Transit's subrogation action did not implicate the limitation-on-lawsuit threshold imposed by N.J.S.A. 39:6A-8(a). Ibid. The Appellate Division held that because Mercogliano's economic loss was covered by his workers' compensation benefits -- not by personal injury protection (PIP) benefits under his automobile insurance policy -- New Jersey Transit's subrogation action did not run afoul of AICRA. Id. at 113. It reversed the trial court's judgment and remanded for further proceedings. Ibid.

We concur with the Appellate Division's determination. We view New Jersey Transit's subrogation action to comport with the objectives and terms of the Workers' Compensation Act. We find no evidence that when the Legislature enacted AICRA, it intended to bar employers and insurers that

3

have paid workers' compensation benefits for economic loss from seeking reimbursement from third-party tortfeasors in cases such as this, in which the employee's losses were covered by workers' compensation benefits and he neither sought nor received PIP benefits. We do not view New Jersey Transit's subrogation action -- limited to workers' compensation benefits paid for economic losses -- to contravene AICRA's provisions or to undermine its goals.

## I.

## A.

The accident that gave rise to this action occurred on December 2, 2014 in Cliffside Park. Mercogliano, acting in the course of his employment, was driving a vehicle owned by New Jersey Transit when his car was struck from the rear by a vehicle driven by defendant Sanchez and owned by defendant Smith. Mercogliano sustained injury to his "right upper extremity." His treating physician later diagnosed him with "cervical strain and strain of the right trapezius." Mercogliano was treated for his injuries and was medically cleared to return to work without restriction approximately two months after the accident.

At the time of his accident, Mercogliano was insured under a standard automobile policy issued by New Jersey Manufacturers Insurance Company.

4

Under that policy, Mercogliano was entitled to up to $250,000 in PIP benefits and $400 weekly income continuation benefits. Because he had elected the limitation-on-lawsuit option under N.J.S.A. 39:6A-8(a), Mercogliano was subject to that provision's threshold. It is undisputed that Mercogliano sustained no injury that would vault the limitation-on-lawsuit threshold.

New Jersey Transit's workers' compensation carrier paid Mercogliano $33,625.70 in workers' compensation benefits, consisting of $6694.04 in medical benefits, $3982.40 in temporary indemnity benefits, and $22,949.26 in "permanent indemnity benefits" characterized by New Jersey Transit as relating to "lost wages." The record does not identify the specific losses for which those benefits were paid.

With his losses covered by workers' compensation benefits, Mercogliano neither sought nor received PIP benefits under his personal automobile insurance policy in connection with his accident.

## B.

### 1.

In its capacity as Mercogliano's employer and subrogee, New Jersey Transit filed a complaint seeking to "recoup workers' compensation benefits pursuant to N.J.S.A. 34:15-40(f)." New Jersey Transit alleged that Mercogliano's injuries resulted from the negligence of Sanchez in the

5

accident. It also asserted a vicarious liability claim against Smith as Sanchez's employer and the owner of the vehicle Sanchez was driving when the accident occurred. Defendants pled as an affirmative defense that New Jersey's no-fault insurance statutory scheme barred New Jersey Transit's subrogation claim.

Pursuant to Rule 4:46-2, defendants moved for summary judgment dismissing New Jersey Transit's complaint. They claimed that New Jersey Transit could not assert a subrogation claim because AICRA prevented Mercogliano from pursuing a third-party action against defendants, given his election of the limitation-on-lawsuit option in his personal insurance policy.

New Jersey Transit cross-moved for partial summary judgment. It sought a declaration that defendants' affirmative defense based on the limitation-on-lawsuit threshold would not bar the subrogation claim. New Jersey Transit conceded that it could bring no subrogation claim based on noneconomic losses in light of Mercogliano's inability to vault N.J.S.A. 39:6A-8(a)'s limitation-on-lawsuit threshold. It argued, however, that because its subrogation claim was based entirely on workers' compensation benefits paid for economic losses, and Mercogliano received no PIP benefits, the Workers' Compensation Act -- not AICRA -- governed the action.

6

The trial court ruled that New Jersey Transit could not assert a claim based on economic loss. It noted that N.J.S.A. 39:6A-2(k) defines economic loss for purposes of AICRA to mean "uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses." In the trial court's view, Mercogliano could not have sued defendants for economic loss. The court concluded that because New Jersey Transit's workers' compensation carrier paid benefits for all of Mercogliano's medical expenses and lost income, he had no "uncompensated loss of income or property," and thus sustained no economic loss for purposes of AICRA. Relying on Continental Insurance Co. v. McClelland, 288 N.J. Super. 185 (App. Div. 1996), the trial court ruled that New Jersey Transit was barred from asserting a claim against defendants for the benefits that it had paid.

The trial court expressed concern about a scenario distinct from the case before it, in which an automobile insurer pays PIP benefits to an injured worker, the employer or workers' compensation carrier reimburses the automobile insurer, and the employer or workers' compensation carrier then pursues a subrogation claim under N.J.S.A. 34:15-40. In the trial court's view, such a result would undermine the legislative policies expressed in AICRA. The trial court also cautioned that if New Jersey Transit prevailed, employers and workers' compensation carriers might seek to recover in subrogation

7

actions against defendants shielded from direct claims by statutes such as the Tort Claims Act, N.J.S.A. 59:8-1 to 12-3, or the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11.

Accordingly, the trial court granted defendants' motion for summary judgment and denied New Jersey Transit's cross-motion for partial summary judgment.

2.

New Jersey Transit appealed the trial court's judgment. In a thoughtful opinion by Judge Geiger, the Appellate Division reversed that judgment. Sanchez, 457 N.J. Super. at 113.

The Appellate Division agreed with New Jersey Transit that its subrogation action arose entirely from "economic loss comprised of medical expenses and wage loss, not noneconomic loss." Id. at 112. However, it rejected the trial court's view that an employer or workers' compensation carrier's subrogation claim based on benefits paid for economic loss contravenes AICRA's legislative intent. Id. at 107-12. The Appellate Division noted that in the Workers' Compensation Act, the Legislature imposed on an employer the obligation to pay workers' compensation benefits for an accident arising from an injured workers' employment, and that N.J.S.A. 34:15-40 "gives the workers' compensation carrier an absolute right

8

to seek reimbursement from the tortfeasor for the benefits it has paid to the injured employee." Id. at 107.

The Appellate Division acknowledged that N.J.S.A. 39:6A-6's collateral source rule places the primary burden on the employer's workers' compensation carrier to compensate an employee injured in the course of employment, in the event that only workers' compensation benefits and PIP benefits are available sources of reimbursement. Id. at 110-11. It noted, however, that "where both workers' compensation benefits and the proceeds of a tort action have been recovered, the tort recovery is primary" under N.J.S.A. 34:15-40. Id. at 111 (quoting Lefkin v. Venturini, 229 N.J. Super. 1, 8-9 (App. Div. 1988)). The Appellate Division therefore concluded that the collateral source rule posed no obstacle to New Jersey Transit's claim. Id. at 111, 113.

The Appellate Division viewed the decision in Continental, on which the trial court relied, to have been rejected by subsequent Appellate Division jurisprudence, and declined to follow it. Id. at 109-10. The court instead invoked Lambert v. Travelers Indemnity Co. of America, in which the Appellate Division had identified the Workers' Compensation Act -- not AICRA -- as the governing law for subrogation claims based on workers' compensation benefits paid to workers injured in motor vehicle accidents in

9

the course of their employment. Id. at 111-12 (citing Lambert, 447 N.J. Super. 61, 67, 75 (App. Div. 2016)).

The Appellate Division therefore reversed and remanded the matter for the entry of partial summary judgment in favor of New Jersey Transit. Id. at 113.

3.

We granted defendants' petition for certification. 237 N.J. 317 (2019). We also granted the motion of the New Jersey Association for Justice (NJAJ) to appear as amicus curiae.

II.

A.

Defendants assert that as a procedural matter, the Appellate Division should not have considered New Jersey Transit's cross-motion for partial summary judgment, which was not the focus of the parties' briefing before the court. Defendants also suggest that one of the three categories of workers' compensation benefits awarded to Mercogliano -- the partial permanent disability benefits that he received -- included compensation for pain and suffering and thus, at least in part, constituted benefits paid for noneconomic loss. As to economic loss, defendants argue that the Legislature intended the limitation-on-lawsuit threshold imposed by N.J.S.A. 39:6A-8(a) to provide a

third-party tortfeasor with a defense against a workers' compensation carrier's subrogation action. Defendants contend that the Appellate Division's decision raises the specter of an increase in the volume of claims and undermines the Legislature's cost-saving goals.

## B.

New Jersey Transit represents that its subrogation claim is entirely premised on economic loss because the benefits paid to Mercogliano compensated him for medical expenses and lost wages. New Jersey Transit contends that the Appellate Division's decision furthers the Legislature's intent, in the Workers' Compensation Act, to promote subrogation. It states that its subrogation claim does not interfere with the cost-saving legislative goals of AICRA, given that its action and any comparable cases will involve uncomplicated claims for liquidated damages that can be resolved quickly and efficiently.

## C.

Amicus curiae NJAJ states that the subrogation claim asserted by an employer or its workers' compensation carrier against a third-party tortfeasor is a rare category of claim. It primarily addresses a question that was not raised by any party and is not relevant to this appeal: whether an individual plaintiff should be allowed to pursue a direct claim for medical expenses and

11

lost wages against a tortfeasor, despite that plaintiff's inability to meet the limitation-on-lawsuit threshold under N.J.S.A. 39:6A-8(a).  NJAJ urges the Court to authorize individual plaintiffs to bring such claims.

III.

A.

We review de novo the trial court's summary judgment determinations and apply the same standard that court used in deciding the motions.  Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019).

Familiar principles of statutory interpretation guide our review.  We strive to "divine and effectuate the Legislature's intent."  Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014) (quoting State v. Buckley, 216 N.J. 249, 263 (2013)); accord DiProspero v. Penn, 183 N.J. 477, 492 (2005).  To that end, we look to the statute's plain language as "the best indicator" of the Legislature's intent, giving its words "their ordinary meaning and significance."  In re Registrant H.D., ___ N.J. ___, ___ (2020) (slip op. at 7) (first quoting State v. Frye, 217 N.J. 566, 575 (2014); then quoting State v. Fuqua, 234 N.J. 583, 591 (2018)).  When statutory construction involves the interplay of multiple statutes, we seek to harmonize them to further the Legislature's intent.  Jones v. Morey's Pier, Inc., 230 N.J. 142, 164 (2017).  We also assume that the

12

Legislature is "aware of judicial construction of its enactments." Maeker v. Ross, 219 N.J. 565, 575 (2014) (quoting DiProspero, 183 N.J. at 494).

To apply those principles to the issue at hand, we review key provisions, first of the Workers' Compensation Act, upon which New Jersey Transit's subrogation claim is premised, and, second, of AICRA, which defendants contend provides a defense to that claim. We then consider case law in which those two statutory schemes have been harmonized.

B.

"For more than a century, the Workers' Compensation Act has provided employees injured in the workplace 'medical treatment and limited compensation "without regard to the negligence of the employer."'" Vitale v. Schering-Plough Corp., 231 N.J. 234, 250 (2017) (quoting Estate of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 584 (2015)). The Act "reflects 'a historic trade-off whereby employees relinquish[] their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffer[] injuries by accident arising out of and in the course of employment.'" Caraballo v. City of Jersey City Police Dep't, 237 N.J. 255, 264 (2019) (alterations in original) (quoting Stancil v. ACE USA, 211 N.J. 276, 285 (2012)).

"The remedial objective of the Workers' Compensation Act is 'to make benefits readily and broadly available to injured workers through a non-complicated process.'" Vitale, 231 N.J. at 250 (quoting Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006)). The Act is liberally construed "in order that its beneficent purposes may be accomplished." Kotsovska, 221 N.J. at 584 (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 42 (2008)).

The Workers' Compensation Act identifies distinct categories of benefits available to qualified employees injured in the course of their employment; benefits in three such categories were paid to Mercogliano and are therefore relevant to this appeal.

First, subject to limitations set forth in the statute, an employer or workers' compensation carrier may "furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible." N.J.S.A. 34:15-15.

Second, an employer or workers' compensation carrier may pay temporary disability payments, calculated as a percentage of the employee's

weekly wage and "paid during the period of [the employee's] disability, not however, beyond 400 weeks." N.J.S.A. 34:15-12(a).

Third, an employer or workers' compensation carrier may pay partial permanent benefits, "[f]or disability partial in character and permanent in quality," based on a percentage of the employee's weekly wage, with the period of payment determined by the nature of the disability. N.J.S.A. 34:15-12(c).[1] Partial permanent disability is defined as a "permanent impairment . . . based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs." N.J.S.A. 34:15-36. Minor injuries and diseases, such as sprains, scars, lacerations, and contusions "which do not constitute significant permanent disfigurement" do not qualify as partial permanent disability. Ibid.

The Workers' Compensation Act thus details categories of claims for which employees may seek recovery from their employers or their employers' workers' compensation carriers; it simultaneously provides those employers or carriers with a mechanism through which to recover benefits paid when the injuries that necessitated those benefits were caused by a third party.

---

[1] No benefits in a fourth category, benefits "[f]or disability total in character and permanent in quality" pursuant to N.J.S.A. 34:15-12(b), were paid to Mercogliano, and that provision is irrelevant here.

15

When it enacted N.J.S.A. 34:15-40, the Legislature "sought . . . to regulate 'the rights and responsibilities of the several parties concerned in compensation payments where, in the course of his employment, injury or death comes to a workman as the result of the fault of a third party.'" Vitale, 231 N.J. at 251 (quoting U.S. Cas. Co. v. Hercules Powder Co., 4 N.J. 157, 165 (1950)). A core component of the Legislature's statutory scheme balancing the parties' competing interests is the right of subrogation, recognized as "a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954). "The underpinning of subrogation is its derivative nature. The insurer obtains only the right of the insured against the tortfeasor subject to defenses of the wrongdoer against the insured." Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 560-61 (1981).

The employer's subrogation right is set forth in N.J.S.A. 34:15-40, which authorizes employers and workers' compensation carriers to seek reimbursement from third-party tortfeasors or their insurance carriers in one of two ways. First, if the employee recovers directly against the tortfeasor or the tortfeasor's carrier, the employer or its workers' compensation carrier may assert a lien against the employee's recovery, N.J.S.A. 34:15-40(b); "for every dollar of the employee's recovery from the third party, the carrier's lien under

16

[N.J.S.A. 34:15-40] entitles it to reimbursement of one dollar (less legal cost) of workers' compensation benefits." Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 597-98 (1995).

Second, the employer or its carrier may seek to recover directly from the third party tortfeasor or that party's insurance carrier. If, as in this case, the employee does not settle with the third-party tortfeasor and declines to pursue a claim against that tortfeasor "within 1 year of the accident," the employer or workers' compensation carrier, after serving "a written demand on the injured employee or his dependents," may pursue a claim against the third party: The employer or its worker's compensation carrier

> can either effect a settlement with the third person or his insurance carrier or institute proceedings against the third person for the recovery of damages for the injuries and loss sustained by such injured employee or his dependents and any settlement made with the third person or his insurance carrier or proceedings had and taken by such employer or his insurance carrier against such third person, and such right of action shall be only for such right of action that the injured employee or his dependents would have had against the third person, and shall constitute a bar to any further claim or action by the injured employee or his dependents against the third person.
>
> [N.J.S.A. 34:15-40(f).]

17

The statute thus limits the employer's or carrier's right of recovery to the same "action that the injured employee . . . would have had against the third person," in accordance with traditional principles of subrogation. Ibid. It simultaneously provides that if, by settlement or judgment, the employer or workers' compensation carrier recovers from the third-party tortfeasor or his or her insurance carrier an amount "in excess of the employer's obligation to the employee or his dependents and the expense of suit, such excess shall be paid to the employee or his dependents." Ibid. N.J.S.A. 34:15-40 operates "[t]o overcome the inequity of double recovery," which could occur if an injured employee were permitted to keep both workers' compensation benefits and damages from a third-party tortfeasor. Frazier, 142 N.J. at 596-97. By authorizing actions against third-party tortfeasors, N.J.S.A. 34:15-40 "promot[es] the equitable balancing of competing interests that the statutory scheme is designed to achieve." Vitale, 231 N.J. at 252. Because it provides the employer or workers' compensation carrier a right to reimbursement, N.J.S.A. 34:15-40(f) serves the legislative goal "to make benefits readily and broadly available to injured workers through a non-complicated process." Tlumac, 187 N.J. at 573.

18

## C.

We next consider the Legislature's intent when it created New Jersey's no-fault insurance scheme in AICRA's predecessor statute, the No-Fault Law, and when it reformed that scheme by enacting AICRA.

The No-Fault Law was enacted in 1972. L. 1972, c. 70. It "required insurance companies to provide insureds unlimited medical expense benefits without regard to fault" while "limit[ing] the right to sue for pain and suffering [and] requiring parties to have over $200 in medical expenses before they would have standing for a negligence suit." Haines v. Taft, 237 N.J. 271, 284 (2019) (citing N.J.S.A. 39:6A-4 (1973); N.J.S.A. 39:6A-8 (1973)), superseded by statute, L. 2019, cc. 244, 245.

The statute's mandated PIP benefits and related provisions were intended to ensure "'prompt compensation for all [of a driver's] economic losses' and to 'ease the burden placed upon [New Jersey] courts by the present system.'" Id. at 284 (alterations in original) (quoting Governor's Signing Statement to A. 667 (June 20, 1972)). As described by leading commentators on New Jersey automobile insurance law, "the PIP law mandates speedy first-party payment of a range of benefits, including medical expenses, lost wages, essential services, survivor benefits and funeral expenses to certain classes of

persons injured in automobile accidents without any consideration of fault at all." Craig & Pomeroy, N.J. Auto Ins. Law § 4:1 (2020).

From its inception, the No-Fault Law made clear that the burden to provide benefits to employees injured in work-related automobile accidents remained on the workers' compensation system. L. 1972, c. 70, § 6. The original No-Fault Law's collateral source rule stated that PIP benefits under "section 4" of the statute would be "payable as loss accrues upon written notice of such loss and without regard to collateral sources." Ibid. However, that provision identified workers' compensation benefits for employees injured in accidents in the course of their employment as an exception to that rule, providing that "benefits, collectible under workmen's compensation insurance . . . shall be deducted from" the employee's PIP benefits. Ibid.

The Legislature's intent to allocate the burden for such benefits to employers and their workers' compensation carriers was underscored by a 1983 amendment to the statute's collateral source provision. L. 1983, c. 362, § 9. That provision authorized a PIP insurer to assert a claim for reimbursement of PIP benefits paid to an injured employee who was entitled to seek workers' compensation benefits but failed to do so. Ibid.

In 1998, the Legislature enacted AICRA, L. 1998, c. 21, § 1, describing it as "comprehensive legislation designed to preserve the no-fault system,

20

while at the same time reducing unnecessary costs which drive [automobile insurance] premiums higher," N.J.S.A. 39:6A-1.1(b).  AICRA "adhered to the recognized 'philosophical basis of the no-fault system . . . a trade-off of . . . providing medical benefits in return for a limitation on the right to sue for non-serious injuries.'"  Haines, 237 N.J. at 287 (ellipses in original) (quoting N.J.S.A. 39:6A-1.1(b) (1998)).

New Jersey's automobile liability insurance laws require that owners of motor vehicles registered or principally garaged in New Jersey maintain "minimum amounts of standard, basic, or special liability insurance coverage for bodily injury, death, and property damage caused by their vehicles." Caviglia v. Royal Tours of Am., 178 N.J. 460, 466 (2004) (citing N.J.S.A. 39:6B-1).  Every policy must "contain [PIP] benefits for the payment of benefits without regard to negligence, liability or fault of any kind" for the named insured and members of his or her family residing in his or her household who sustain bodily injury in an accident.  N.J.S.A. 39:6A-4.

If a named insured elects the limitation-on-lawsuit option, certain third-party tortfeasors are exempted "from tort liability for noneconomic loss" unless the insured "sustained a bodily injury which results in death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of

21

medical probability, other than scarring or disfigurement." N.J.S.A. 39:6A-8(a). To recover for noneconomic loss, an insured must therefore "vault" the limitation-on-lawsuit threshold by "establish[ing] that 'as a result of bodily injury, arising out of the . . . operation . . . or use of' an automobile, she has 'sustained a bodily injury which results in' one of the enumerated categories of serious injury, including 'a permanent injury within a reasonable degree of medical probability.'" Davidson v. Slater, 189 N.J. 166, 186 (2007) (quoting N.J.S.A. 39:6A-8(a)); DiProspero, 183 N.J. at 488; Caviglia, 178 N.J. at 470 n.4.

As used in N.J.S.A. 39:6A-8(a), the term "noneconomic loss" is defined as "pain, suffering and inconvenience." N.J.S.A. 39:6A-2(i). Economic loss, in contrast, is defined as "uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses." N.J.S.A. 39:6A-2(k).

In AICRA, the Legislature retained the No-Fault Act's provision precluding the admission of evidence of PIP benefits "collectible or paid" under an insured's automobile insurance policy:

> Except as may be required in an action brought pursuant to [N.J.S.A. 39:6A-9.1], evidence of the amounts collectible or paid under a standard automobile insurance policy pursuant to [N.J.S.A. 39:6A-4 and -10], amounts collectible or paid for

22

medical expense benefits under a basic automobile insurance policy pursuant to [N.J.S.A. 39:6A-3.1], and amounts collectible or paid for benefits under a special automobile insurance policy pursuant to [N.J.S.A. 39:6A-3.3] to an injured person, including the amounts of any deductibles, copayments or exclusions, including exclusions pursuant to [N.J.S.A. 39:6A-4.3], otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.

[N.J.S.A. 39:6A-12.]

That section was intended to ensure that an "injured person who was the beneficiary of the PIP payments could not and should not recover from the tortfeasor the medical, hospital and other losses for which he had already been reimbursed." Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 387 (1977). The Legislature intended the provision to further ancillary goals of "easing court congestion and lowering automobile insurance costs." Bardis v. First Trenton Ins. Co., 199 N.J. 265, 279 (2009).

AICRA's collateral source rule retains, among other exceptions, the No-Fault Act's exception for workers' compensation benefits. N.J.S.A. 39:6A-6 provides in part:

The benefits provided in [N.J.S.A. 39:6A-4 and -10], the medical expense benefits provided in [N.J.S.A. 39:6A-3.1] and the benefits provided in [N.J.S.A. 39:6A-3.3] shall be payable as loss accrues, upon written notice of such loss and without regard to

23

collateral sources, except that benefits, collectible under workers' compensation insurance, . . . shall be deducted from the benefits collectible under [N.J.S.A. 39:6A-4 and -10], the medical expense benefits provided in [N.J.S.A. 39:6A-3.1] and the benefits provided in [N.J.S.A. 39:6A-3.3].

The collateral source rule imposes the primary obligation to pay both benefits covered by workers' compensation and PIP benefits "on the employer rather than the PIP insurer and reflects a legislative policy determination that losses resulting from work-related automobile accidents should be borne by the 'ultimate consumers of the goods and services in whose production they are incurred' as opposed to 'the automobile-owning public' in general." Portnoff v. N.J. Mfrs. Ins. Co., 392 N.J. Super. 377, 383 (App. Div. 2007) (quoting Lefkin, 229 N.J. Super. at 12).

Thus, the Legislature made clear that when an employee injured in a work-related accident is entitled to benefits under the Workers' Compensation Act, that statute -- not AICRA -- provides his or her primary source of recovery for medical expenses and lost wages. N.J.S.A. 39:6A-6. It envisioned that the employer or its workers' compensation carrier will pay medical and disability benefits to the injured employee, and that the employee will neither seek nor receive PIP benefits under his automobile policy, thus

24

obviating the need for his or her automobile insurer to pay those benefits. Ibid.

Significantly, when it enacted AICRA, the Legislature did not amend the Workers' Compensation Act to eliminate or circumscribe the statutory right of subrogation in cases involving injuries to employees in motor vehicle accidents. N.J.S.A. 34:15-40. It left that provision intact.

D.

In a series of decisions over three decades, the Appellate Division has addressed challenges based on provisions of AICRA or the No-Fault Law to an employer's or workers' compensation carrier's right of subrogation under N.J.S.A. 34:15-40.

The first such decision was Lefkin, decided prior to AICRA's enactment. There, an employee injured in a work-related automobile accident received workers' compensation benefits, and his employer asserted a lien on any third-party recovery that he received. Lefkin, 229 N.J. Super. at 6-7. The employee sued his automobile insurer, seeking PIP benefits, as well as the drivers allegedly at fault in his accident, who settled with him. Id. at 5.

After the accident, the employee "instituted a workers' compensation action against his alleged employer." Id. at 5-6. The employee argued that his settlement with the third-party tortfeasor should not be construed to include

25

payment for the medical expenses covered by workers' compensation, because N.J.S.A. 39:6A-12 would bar evidence of "amounts collectible or paid" under PIP coverage in a third-party action. Id. at 8-9. He argued that "the PIP carrier, not he, should pay the medical expense portion of the compensation lien." Id. at 8.

The Appellate Division rejected that argument. Id. at 9. It held that when workers' compensation benefits are collected by an employee, PIP benefits "are neither collectible nor paid," and N.J.S.A. 39:6A-12's bar on evidence of "amounts collectible or paid" under PIP coverage does not apply. Ibid. The court accordingly ruled that an injured employee who receives workers' compensation benefits for medical expenses and then settles with the tortfeasor subject to a workers' compensation lien is not entitled to be reimbursed by his PIP insurer for the amount subject to that lien. Ibid.

Noting the Legislature's intent to ensure that an injured employee is reimbursed -- but reimbursed only once -- for his medical expenses, the court held:

> In the circumstances here, three potential sources of reimbursement of his medical expenses were available to plaintiff: workers' compensation benefits, PIP benefits, and recovery from the tortfeasor. It is, moreover, clear that the overall legislative intention is ultimately to assure a plaintiff-insured-worker such reimbursement, but only by way of a single recovery.

26

Where only two potential payment sources are implicated, the controlling statute plainly dictates which of the two is primary. Thus, where both workers' compensation benefits and proceeds of a tort action have been recovered, the tort recovery is primary. This accords with the purpose of N.J.S.A. 34:15-40, which is to implement the employer's right to subrogation against the tortfeasor responsible for its payment obligation to its employee. Where only workers' compensation benefits and PIP benefits are available, the primary burden is placed on workers' compensation as a matter of legislative policy by way of the collateral source rule of N.J.S.A. 39:6A-6. And when only PIP benefits and tortfeasor liability are involved, the primary burden is placed as a matter of policy on the PIP carrier by N.J.S.A. 39:6A-12.

[Id. at 8-9 (citations omitted).]

The Appellate Division thus underscored in Lefkin that absent a third-party recovery, the primary source of reimbursement for medical benefits for an employee injured in a motor vehicle accident in the course of the employment is workers' compensation. Ibid. It held, however, that if a third-party recovery is available, the provider of the workers' compensation benefits has the right to assert its lien on the third-party recovery under N.J.S.A. 34:15-40 without contravening the No-Fault Act. Ibid.

Two years before the Legislature enacted AICRA, the Appellate Division decided Continental, the decision on which the trial court most heavily relied in this case. 288 N.J. Super. 185. In Continental, an employee

27

who had elected the limitation-on-lawsuit threshold in his personal automobile policy was injured in a work-related automobile accident and was paid workers' compensation benefits for medical expenses. Id. at 187-88. His employer's workers' compensation carrier sued the alleged tortfeasor pursuant to N.J.S.A. 34:15-40, seeking reimbursement of the workers' compensation benefits paid, and the tortfeasor raised the No-Fault Act's limitation-on-lawsuit threshold as a defense to the third-party action. Id. at 188-89. The trial court granted the workers' compensation carrier's motion for partial summary judgment striking the tortfeasor's defense based on the limitation-on-lawsuit threshold that was in effect under the No-Fault Law prior to AICRA. Id. at 188.

Reversing the trial court's grant of partial summary judgment, the Appellate Division acknowledged that the No-Fault Act "does not limit 'the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party.'" Id. at 190 (quoting N.J.S.A. 39:6A-12). It noted, however, that had the employee been injured in an accident unrelated to work, his sole source of benefits for medical and income continuation would have been the PIP provisions of his automobile insurance policy, and that under those circumstances, the employee would be precluded from pursuing a third-party claim for those losses. Ibid. The Appellate Division reasoned that

28

the "[d]efendant's liability is not affected by the fortuitous circumstance that [the] plaintiff was entitled to workers' compensation benefits." Ibid.

The Appellate Division held in Continental that the injured employee was "clearly entitled to receive PIP benefits for his economic loss" and that "[w]hether he received them is immaterial" to the analysis. Ibid. Observing that the workers' compensation carrier's rights "rise no higher than the employee's rights to which it is subrogated," the court barred the subrogation claim for medical expenses. Ibid. It remanded the matter to the trial court to determine whether the employee had an uncompensated income loss, which might give rise to a subrogation claim. Id. at 191; see also Patterson v. Adventure Trails, 364 N.J. Super. 444, 447-49 (Law Div. 2003) (applying Continental and AICRA to bar a workers' compensation carrier's subrogation claim against a third-party tortfeasor for medical benefits paid to an injured worker).

Two post-AICRA Appellate Division decisions addressed that statute's interplay with workers' compensation subrogation under N.J.S.A. 34:15-40.

In Talmadge v. Burn, an employee injured in a work-related accident received medical, wage, and indemnity benefits from her employer's workers' compensation carrier. 446 N.J. Super. 413, 416 (App. Div. 2016). After the employee settled her claim with the third-party tortfeasor, the workers'

29

compensation insurer asserted a lien against her recovery. Ibid. Noting that as a no-fault insured she was barred from recovering medical benefits from another no-fault insured, the employee argued that the rights of the workers' compensation carrier were limited to the rights that she could have asserted, and that accordingly the carrier could not seek reimbursement of the benefits that it had paid to her. Id. at 417.

The Appellate Division rejected that "syllogism" as an "inaccurate statement of the law." Ibid. The court considered AICRA's collateral source rule, N.J.S.A. 39:6A-6, to express the Legislature's intent that workers' compensation -- not PIP benefits -- assume "the primary burden" when "only workers' compensation and PIP benefits are available" to the injured employee. Id. at 418 (citing Lefkin, 229 N.J. Super. at 7). The court reasoned that when workers' compensation benefits are paid, N.J.S.A. 34:15-40's right of subrogation is essential to avoid a double recovery by the employee. Ibid. (citing Frazier, 142 N.J. at 597-98). It therefore enforced the workers' compensation lien. Id. at 419.

In Lambert, the Appellate Division considered workers' compensation carriers' appeals of trial court orders partially extinguishing liens for medical benefits that had been imposed on injured employees' recovery against tortfeasors. 447 N.J. Super. at 66-70. The Appellate Division reversed those

orders, holding that when it enacted AICRA, the Legislature "did not displace the workers' compensation system." Id. at 74. Instead, the court noted, N.J.S.A. 39:6A-6's collateral source rule requires that benefits collectible under workers' compensation insurance "'shall be deducted'" from PIP benefits collectible under enumerated provisions of AICRA, thus "shift[ing] the burden of providing insurance from the automobile insurance system to the workers' compensation system." Ibid. (quoting N.J.S.A. 39:6A-6). Accordingly, the Appellate Division enforced the workers' compensation liens. Id. at 77.

The Appellate Division's decision in Continental was not cited in either Talmadge or Lambert. The Appellate Division panels in both cases, however, declined to follow the Continental panel's reasoning that because an individual injured in an accident unrelated to work could have recovered medical expenses under his automobile insurance policy, and would be barred by the No-Fault Act from pursuing the tortfeasor for damages based on those two categories of loss, the workers' compensation carrier could not assert a subrogation claim based on those benefits. See Lambert, 447 N.J. Super. at 74-77 (enforcing workers' compensation lien for medical benefits); Talmadge, 446 N.J. Super. at 417-19 (same). Both courts relied instead on the principle stated in Lefkin: when workers' compensation benefits are paid to an injured

employee for economic loss, as the collateral source rule set forth in N.J.S.A. 39:6A-6 envisions, and the PIP carrier is relieved from the obligation to pay those benefits, AICRA poses no obstacle to a subrogation claim under N.J.S.A. 34:15-40. Ibid.

## IV.

Against that backdrop, we review the Appellate Division's decision reversing the trial court's grant of defendants' motion for summary judgment and its denial of New Jersey Transit's motion for partial summary judgment. Sanchez, 457 N.J. Super. at 113.

## A.

We briefly comment on two procedural issues. First, we reject defendants' argument that the Appellate Division improperly considered the trial court's denial of New Jersey Transit's motion for partial summary judgment as well as the trial court's grant of defendants' summary judgment motions. New Jersey Transit clearly appealed the trial court's rulings on both cross-motions for summary judgment to the Appellate Division. Moreover, New Jersey Transit asserted before the Appellate Division the argument that it had made before the trial court in its motion for partial summary judgment: that N.J.S.A. 39:6A-8(a)'s limitation-on-lawsuit threshold should not bar its subrogation claim. The Appellate Division did not err when it reviewed the

trial court's denial of New Jersey Transit's motion for partial summary judgment.

Second, we acknowledge defendants' contention that there is an unresolved dispute as to the nature of the partial permanent disability benefits paid to Mercogliano pursuant to N.J.S.A. 34:15-12(c). Notwithstanding New Jersey Transit's representation that it paid workers' compensation benefits to Mercogliano only for economic loss consisting of medical expenses and lost wages, defendants claim that some or all of the partial permanent disability benefits paid to Mercogliano actually compensated him for pain and suffering due to his accident, thus implicating N.J.S.A. 39:6A-8(a)'s limitation-on-lawsuit threshold.

The trial court viewed the workers' compensation benefits at issue to compensate Mercogliano only for his economic loss in the form of medical expenses and lost wages. The Appellate Division agreed; it expressly assumed that this appeal implicates only benefits for economic loss. Sanchez, 457 N.J. Super. at 112 (noting that New Jersey Transit "seeks to recover benefits to Mercogliano for economic loss comprised of medical expenses and wage loss, not noneconomic loss"). The record on appeal reveals no details about the partial permanent disability benefits that would contravene the trial court's and

Appellate Division's conclusion that those benefits exclusively related to economic loss.

Should the trial court deem it appropriate, it has the discretion to expand the record on remand and resolve any factual dispute about the partial permanent disability payments made in this case. As did the Appellate Division, we confine our analysis to workers' compensation subrogation based on payments made for economic loss.

B.

We concur with the Appellate Division that the Workers' Compensation Act reflects the Legislature's clear intent to allow employers and carriers that have paid workers' compensation benefits to assert subrogation rights against third-party tortfeasors. Sanchez, 457 N.J. Super. at 107; see also N.J.S.A. 34:15-40(b), (c), (f); Vitale, 231 N.J. at 252-55 (discussing legislative policies reflected in Workers' Compensation Act); Frazier, 142 N.J. at 596-98 (same); Danesi v. Am. Mfrs. Mut. Ins. Co., 189 N.J. Super. 160, 165 (App. Div. 1983) (same). The Legislature's objective is clear: protected by their statutory subrogation rights, employers and workers' compensation carriers will promptly pay benefits for medical expenses and other economic loss to employees injured in the course of their employment. See N.J.S.A. 34:15-40(b), (c), (f); Vitale, 231 N.J. at 252-55 (discussing legislative policies

34

reflected in Workers' Compensation Act); <u>Frazier</u>, 142 N.J. at 596-98 (same). The subrogation claim ensures that the employee will not be awarded a double recovery in workers' compensation and then in a third-party claim. <u>Frazier</u>, 142 N.J. at 597; <u>Marano v. Schob</u>, 455 N.J. Super. 283, 290 (App. Div. 2018). Consistent with those objectives, the Legislature limits the subrogation right only by the principle that the employer's or carrier's right to reimbursement "shall be only for such right of action that the injured employee or his dependents would have had against the third person." N.J.S.A. 34:15-40(f).

With a few words of statutory text, the Legislature could have excluded from the Workers' Compensation Act subrogation claims based on the payment of benefits to an employee injured in a work-related motor vehicle accident, and treated such an accident, for purposes of AICRA, as it treats any other. It could have expressed its intent that AICRA alone governs benefits to individuals injured in motor vehicle accidents, even accidents that arise in the course of employment.

The Legislature has declined to take such a step. It created no exceptions to N.J.S.A. 34:15-40's subrogation right, either before the enactment of AICRA or in that statute's wake, for employees eligible for PIP benefits who are injured in work-related automobile accidents such as the accident at issue here. <u>See</u> N.J.S.A. 34:15-40. As the Appellate Division

observed in <u>Lambert</u>, "had the Legislature intended to effectuate such a major change, it would have used express language in the statute and discussed that incorporation in AICRA's legislative history." 447 N.J. Super. at 75.

In the absence of direct evidence of legislative intent, the trial court relied on the description of economic loss in AICRA's definitional provision, N.J.S.A. 39:6A-2(k). The court reasoned that once New Jersey Transit had paid Mercogliano's medical expenses and awarded him disability benefits, there was no longer an "economic loss" at issue, and thus no basis for a subrogation claim. To the trial court, the act that gave rise to New Jersey Transit's subrogation claim -- its payment of benefits to Mercogliano under N.J.S.A. 34:15-15 and N.J.S.A. 34:15-12(a), (c) -- simultaneously defeated that claim, because it left Mercogliano with no "uncompensated" loss.

We respectfully disagree with the trial court. We discern no evidence that the Legislature intended to bar a workers' compensation subrogation claim by virtue of the very benefits that created that claim in the first place. As did the Appellate Division, we conclude that Mercogliano suffered an economic loss in the form of medical expenses and lost wages, and that New Jersey Transit paid him benefits for that economic loss. <u>Sanchez</u>, 457 N.J. Super. at 112.

As they did before the trial court and Appellate Division, defendants rely primarily on the Appellate Division's decision in Continental. They argue that because Mercogliano would have been eligible to receive PIP benefits had he not qualified for workers' compensation benefits, AICRA bars New Jersey Transit's claim for reimbursement of the benefits it paid for that loss. We disagree.

The Appellate Division's decision does not contravene N.J.S.A. 39:6A-12. In most settings, that statute bars the admission in a third-party action of losses "collectible or paid" by PIP benefits under N.J.S.A. 39:6A-3.1, -3.3, -4, -4.3, or -10. N.J.S.A. 39:6A-12. Reimbursed for his medical expenses and lost wages by virtue of his workers' compensation benefits, Mercogliano was not entitled to -- and did not receive -- PIP benefits. Sanchez, 457 N.J. Super. at 113. As the Appellate Division noted in Lefkin, when workers' compensation benefits are available to an injured employee, "PIP benefits in that situation are neither collectible nor paid," and accordingly N.J.S.A. 39:6A-12 has no bearing on the analysis. 229 N.J. Super. at 9. We are unpersuaded by the reasoning set forth in the Continental decision as applied to the circumstances here, and agree that the Continental decision is "contrary to the purposes underlying the Workers' Compensation Act." Craig & Pomeroy, § 12:3.

Moreover, N.J.S.A. 34:15-40 does not contravene AICRA's collateral source rule. In AICRA, the Legislature made clear its goal to provide prompt benefits to employees injured in work-related automobile accidents, with the ultimate responsibility to pay medical expenses imposed on the employer or its workers' compensation carrier. The statute's collateral source rule provides that workers' compensation benefits "shall be deducted from the [PIP] benefits collectible" under one of four enumerated provisions of AICRA. N.J.S.A. 39:6A-6. As the Appellate Division noted in Lambert, "[w]hen a worker suffers a work-related injury in a motor vehicle accident, workers' compensation coverage is the primary source of insurance under the collateral source rule." 447 N.J. Super. at 73 (citing N.J.S.A. 39:6A-6). The employer's or workers' compensation carrier's payment of workers' compensation benefits "relieves the PIP carrier from the obligation of making payments for expenses incurred by the insured which are covered by workers' compensation benefits." Lefkin, 229 N.J. Super. at 7.

The result intended by the Legislature is precisely what occurred here. Mercogliano was paid workers' compensation benefits for his medical expenses, temporary disability payments, and partial permanent disability payments. He never sought or received PIP benefits from his automobile insurer, and his accident imposed no burden on that insurer. The Legislature's

38

objective in enacting the Workers' Compensation Act -- and N.J.S.A. 39:6A-6's collateral source rule -- was achieved in the setting of this appeal. New Jersey Transit's subrogation claim is entirely consonant with AICRA's collateral source rule.

In short, we concur with the Appellate Division in this appeal that the Lefkin, Talmadge, and Lambert decisions properly reconciled the two statutory schemes at issue here. See Sanchez, 457 N.J. Super. at 109-13. Like those courts, we find in AICRA no evidence that the Legislature intended to bar subrogation claims in settings such as this.[2]

## C.

Our dissenting colleagues devote much of their argument to an exploration of the Legislature's objective to reduce automobile insurance premiums when it enacted AICRA. Post at ___ (slip op. at 1-2; 5-7; 10-11). We agree with the dissent that the Legislature's cost-saving goal in AICRA is laudable and clear. That goal, however, does not resolve the question of

---

[2] We do not address the argument of amicus curiae NJAJ regarding potential claims by individual plaintiffs, as distinct from subrogation claims asserted by employers and workers' compensation carriers that are governed by the Workers' Compensation Act. That argument was not raised by any party. See Dugan v. TGI Friday's, Inc., 231 N.J. 24, 70 n.15 (2017) (declining to reach an issue raised by amici but not by any party); Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n., 91 N.J. 38, 48-49 (1982) ("[A]n amicus curiae must accept the case before the court as presented by the parties and cannot raise issues not raised by the parties.").

statutory interpretation raised by this appeal: whether one or more provisions of AICRA should be construed to bar New Jersey Transit's subrogation claim.

Our dissenting colleagues adopt the trial court's view that because New Jersey Transit paid Mercogliano's medical expenses and lost wages in the form of workers' compensation payments, there is no "economic loss" within the meaning of N.J.S.A. 39:6A-2(k), and therefore no subrogation claim for such an economic loss. Post at ___ (slip. op. at 3-4). If our dissenting colleagues were correct that by virtue of N.J.S.A. 39:6A-2(k), there was no economic loss in this case, then the dissent's contentions regarding the impact of N.J.S.A. 39:6A-6 and -12 on a subrogation action based on an injured employee's economic loss, post at ___ (slip op. at 1-2, 6, 8, 10-11), would be irrelevant.

In any event, for the reasons explained, see supra pp. 34-36, we view the trial court's and dissent's application of N.J.S.A. 39:6A-2(k)'s definitional language to be incorrect. We view Mercogliano's medical payments and lost wages to constitute economic loss and consider New Jersey Transit's payment of workers' compensation benefits for medical expenses and lost wages to derive from that loss.

Our dissenting colleagues embrace the holding of Continental, 288 N.J. Super. at 190. Post at ___ (slip op. at 3-4). Our colleagues evidently share the Continental panel's view that economic losses paid entirely through

40

workers' compensation benefits nonetheless constitute "amounts collectible or paid" by PIP benefits inadmissible in a third-party action under N.J.S.A. 39:6A-12.  We disagree.  Here, Mercogliano was never "paid" PIP benefits. Moreover, in the wake of New Jersey Transit's award of workers' compensation benefits for Mercogliano's loss, his economic losses were not "collectible" through his PIP carrier.  See Lefkin, 229 N.J. Super. at 9 ("PIP benefits are not available to an insured if workers' compensation benefits are also available to him.").  As noted, see supra pp. 36-38, we do not view Continental to be persuasive as applied to this case, and instead consider Lambert, 447 N.J. Super. 61, Talmadge, 446 N.J. Super. 413, and Lefkin, 229 N.J. Super. 1 -- unaddressed by the dissent -- to provide the more compelling analysis.

Finally, our dissenting colleagues enumerate three hypothetical scenarios; in each, Mercogliano would receive PIP benefits instead of the workers' compensation benefits that he was actually awarded.  Post at ___ (slip op. at 9).  Our dissenting colleagues argue that in each of their alternative fact patterns, N.J.S.A. 39:6A-6 or N.J.S.A. 39:6A-12 would bar a workers' compensation subrogation claim, and that those statutes should also bar the claim at issue here.  Id.  at 9-10.

41

We respectfully note that our task is not to address alternative fact patterns distinct from the one that is before us. According to the undisputed record, Mercogliano did not seek PIP benefits. He did not receive PIP benefits. New Jersey Transit did not seek reimbursement from Mercogliano's PIP carrier, let alone prevail in such an effort. Instead, it paid the benefits as N.J.S.A. 34:15-12(a), (c) and -15 require, and sought reimbursement only from the third-party tortfeasor. See Lefkin, 229 N.J. Super. at 9 (noting that "where both workers' compensation and proceeds of a tort action have been recovered, the tort recovery is primary."). In the actual setting of this case, PIP benefits were never implicated. Alternative scenarios distinct from this case should be left for another day.

D.

We acknowledge defendants' contention that workers' compensation subrogation claims arising from work-related motor vehicle accidents may increase the volume of claims, thus exacerbating the burden on the no-fault automobile insurance system as a whole. We also note New Jersey Transit's response that any such claims would be simple and easily resolved. The Legislature has the authority to address any such concerns by amending the Workers' Compensation Act, AICRA, or both statutory schemes.

42

JUSTICE PATTERSON filed a concurrence, in which CHIEF JUSTICE RABNER and JUSTICE FERNANDEZ-VINA join.  JUSTICE ALBIN filed a dissent, in which JUSTICES LaVECCHIA and SOLOMON join.  JUSTICE TIMPONE did not participate.

New Jersey Transit Corporation, a/s/o David Mercogliano,

Plaintiff-Respondent,

v.

Sandra Sanchez and Chad Smith,

Defendants-Appellants.

JUSTICE ALBIN, dissenting.

The conclusion reached by my concurring colleagues will ultimately lead to increased automobile insurance premiums and increased litigation over economic damages incurred in work-related automobile accidents -- an outcome in conflict with a series of legislative enactments aimed at making automobile insurance more affordable in this State. The simple question in this case is whether the economic costs of the injuries suffered by a driver in a work-related automobile accident are to be borne by the workers' compensation insurance system or the automobile insurance system. The Legislature has answered that question.

When a driver is involved in a work-related automobile accident and his economic costs are recoverable under either his private automobile insurance carrier's personal injury protection (PIP) policy or under his employer's workers' compensation scheme, New Jersey's no-fault automobile insurance

1

system makes the workers' compensation carrier primarily responsible for reimbursing those costs.  When an injured driver's economic losses are "collectible" under his PIP policy but paid by his employer's workers' compensation carrier, the no-fault system prohibits a workers' compensation subrogation action against the tortfeasor or the tortfeasor's automobile liability insurance carrier.  See N.J.S.A. 39:6A-6, -12.  Despite the clear language and intent of the no-fault system, the concurring opinion allows the workers' compensation carrier here to sue the tortfeasors or their automobile insurance carrier in a subrogation action, thus permitting the very outcome the Legislature intended to foreclose -- more litigation and greater financial burdens on our automobile insurance system.

The misreading of the applicable statutory schemes compels me to dissent from my concurring colleagues.

## I.

New Jersey Transit Corporation (New Jersey Transit) employee David Mercogliano was driving one of his employer's vehicles when he was rear-ended by a vehicle driven by defendant Sandra Sanchez, owned by defendant Chad Smith, and insured by Allstate Insurance Corporation (Allstate).  As a result of his injuries, Mercogliano incurred economic damages of approximately $7000 in medical expenses and $27,000 in lost wages -- costs

2

recoverable both under his PIP policy and under his employer's workers' compensation policy.[1]  Under its workers' compensation policy, New Jersey Transit paid Mercogliano's economic damages and then, in a subrogation action, sued defendants.  Because Allstate insured defendant Smith's vehicle, Allstate was responsible for the defense and indemnification of any liability lawsuit as set forth in the insurance policy.

Judge Polifroni dismissed New Jersey Transit's subrogation action on summary judgment on the ground that New Jersey Transit had no greater rights than those held by Mercogliano.  Mercogliano could not sue the tortfeasors (or their automobile insurance carrier) because he did not suffer an uncompensated loss under the no-fault system.  See N.J.S.A. 39:6A-2(k), -12.  Under the Workers' Compensation Act, N.J.S.A. 34:15-1 to -146, New Jersey Transit could not undertake a cause of action that Mercogliano had no right to pursue against the tortfeasors.  See N.J.S.A. 34:15-40(f).  Judge Polifroni understood that to rule otherwise would allow workers' compensation carriers not only to introduce claims into the court system that the Legislature meant to

---

[1]  The policy limits of Mercogliano's PIP coverage were $250,000 in medical expenses and $41,600 in lost wages.  Mercogliano had selected the limitation-on-lawsuit threshold in his policy that barred him from suing for pain-and-suffering (noneconomic) damages in the absence of a permanent injury.  Mercogliano did not allege that he vaulted that threshold.  See N.J.S.A. 39:6A-8.

exclude, but also to shift costs allocated to the workers' compensation system to the automobile insurance system, in contravention of the no-fault scheme.

Judge Polifroni followed the well-reasoned decision in Continental Insurance Co. v. McClelland, 288 N.J. Super. 185 (App. Div. 1996). There, the Appellate Division, addressing an issue similar to the one before us, pointed out that "[t]he compensation carrier's rights rise no higher than the employee's rights to which it is subrogated. [The employee] was clearly entitled to receive PIP benefits for his economic loss. Whether he received them is immaterial." Id. at 190. Thus, in Continental, the workers' compensation carrier could not sue the tortfeasor (or the automobile insurance liability carrier) because of "the fortuitous circumstance that [the injured employee] was entitled to workers' compensation benefits." Ibid.

The Appellate Division panel that reversed Judge Polifroni permits a new class of claims against automobile insurers, previously barred by Continental, that will inevitably lead to increased insurance premiums -- an outcome clearly not intended by the Legislature. See DiProspero v. Penn, 183 N.J. 477, 485 (2005) ("This State's more than thirty-year history with no fault insurance has been marked by legislative efforts to control the rising cost of automobile insurance . . . ."); see also Haines v. Taft, 237 N.J. 271, 284-87 (2019), superseded by statute, L. 2019, cc. 244, 245; Caviglia v. Royal Tours

4

of Am., 178 N.J. 460, 467 (2004).  Because of the three-three split on this Court -- three members to affirm and three members to reverse -- that mistaken Appellate Division decision will stand.  See Gallena v. Scott, 1 N.J. 430, 432 (1949).

A brief review of the history of New Jersey's no-fault system lays bare the misguided path the concurrence has taken.

## II.

Beginning in 1972, with the enactment of the New Jersey Automobile Reparation Reform Act (No Fault Act), L. 1972, c. 70, the Legislature passed a series of laws, all aimed at controlling the ever-rising cost of automobile insurance.  See DiProspero, 183 N.J. at 485.  A major feature of the No Fault Act was PIP -- a form of first-party self-insurance that automatically covers an injured driver's economic losses, such as medical expenses and lost wages, regardless of fault.  See ibid.; L. 1972, c. 70, § 4.  In exchange for the swift payment of economic losses paid by the PIP carrier, the No Fault Act prohibited the injured driver from bringing a claim for economic losses "collectible or paid" under PIP, thus eliminating costly litigation.[2]  See L. 1972, c. 70, § 12; Caviglia, 178 N.J. at 467.

---

[2]  The No Fault Act also required all drivers to carry liability insurance.  L. 1972, c. 70, § 3.

Since its inception, and in its present iteration, our no-fault law makes the workers' compensation system the primary source of reimbursement for economic damages suffered by a driver injured in a work-related automobile accident. N.J.S.A. 39:6A-6; L. 1972, c. 70, § 6. When the economic losses incurred by a driver injured in the course of his employment are covered by both his employer's workers' compensation carrier and his PIP policy, the workers' compensation carrier is responsible for the costs. N.J.S.A. 39:6A-6. Consistent with the overall goal of the no-fault insurance system, this rule -- known as the collateral source rule -- was intended to lower automobile insurance premiums by making the workers' compensation system responsible for the economic losses of the injured employee.

Over decades, the Legislature made a number of alterations to the no-fault system to further its original purpose of keeping insurance premiums affordable. See Haines, 237 N.J. at 284-87; DiProspero, 183 N.J. at 485-86; Caviglia, 178 N.J. at 467. Important to our analysis is the 1984 New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act (Cost Containment Act), L. 1983, c. 362.

With the Cost Containment Act, the Legislature again sought to achieve "reductions in premiums for New Jersey motorists." Statement of Governor Thomas H. Kean to A. 3981 (Oct. 4, 1983). The Cost Containment Act

6

expanded the collateral source rule by providing that when a driver's PIP policy pays for his economic losses that are also covered under the workers' compensation system, the automobile carrier may seek reimbursement from the workers' compensation carrier. L. 1983, c. 362, § 9. By that expansion of the collateral source rule, the Legislature made clear again its intent to shift losses from automobile insurers to workers' compensation carriers with the goal of reducing automobile insurance premiums.

The 1998 Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, was the Legislature's most recent concerted effort to address "[t]he high cost of automobile insurance in New Jersey" that forced many lower income residents "to drop or lapse their coverage in violation of the State's mandatory motor vehicle insurance laws." See N.J.S.A. 39:6A-1.1. Although the details of AICRA are not relevant to our discussion, our present no-fault system still requires all drivers to carry liability insurance and PIP. See N.J.S.A. 39:6A-3, -4.[3] Significantly, an injured driver whose economic losses are "collectible or paid" under his PIP policy cannot sue the tortfeasor (or his automobile liability carrier) for those losses; instead, the injured driver can seek only "uncompensated" economic losses. N.J.S.A. 39:6A-12.

---

[3] In very limited circumstances, some individuals on government assistance may opt for special insurance that does not require liability coverage. N.J.S.A. 39:6A-3.3.

7

The Workers' Compensation Act, passed in 1911 -- over sixty years before the No Fault Act -- requires employers to cover their employees' medical expenses and lost wages for work-related accidents.  See N.J.S.A. 34:15-7, -12, -15; L. 1911, c. 95.  The Workers' Compensation Act allows employers to sue third-party tortfeasors who injure their employees on the job as subrogees of their employees, but "only for such right of action that the injured employee or his dependents would have had against the third person." N.J.S.A. 34:15-40(f).

Harmonizing the no-fault automobile insurance system with the Workers' Compensation Act, the economic losses suffered by a driver injured in a work-related accident are still "collectible" under PIP, even if covered by workers' compensation.  See N.J.S.A. 39:6A-12.  The injured driver, moreover, cannot sue unless he has an "uncompensated" economic loss.  See ibid.  An injured driver who has been made whole by a workers' compensation carrier that covers his economic damages does not have an "uncompensated" loss.  See ibid.  Because the injured driver would not have a cause of action against the tortfeasor under N.J.S.A. 39:6A-12, the workers' compensation carrier does not have a right of subrogation against the tortfeasor or his automobile insurance carrier.  See N.J.S.A. 34:15-40(f).  A workers' compensation subrogation action that shifts the cost to the automobile

8

insurance system undermines the very goal of decades of no-fault automobile insurance law.

All three of the following outcomes are compelled by a common-sense reading of the legislation undergirding the no-fault system, which is aimed at eliminating economic damage lawsuits recoverable under PIP:

> (1)    had Mercogliano recovered his medical expenses and lost wages through PIP, his insurance company could not have sued defendants (or their automobile insurance carrier) in a subrogation action, see N.J.S.A. 39:6A-12;

> (2)    had Mercogliano not sought reimbursement of his economic damages through his PIP policy or through the workers' compensation system, he could not have sued defendants because those damages were "collectible" under his PIP policy, see N.J.S.A. 39:6A-12; and

> (3)    had Mercogliano received payment of his economic damages through his PIP policy, his PIP carrier would have been entitled to reimbursement from New Jersey Transit because Mercogliano's injuries were work-related, see N.J.S.A. 39:6A-6.

If those outcomes are compelled -- if Mercogliano and his PIP carrier cannot sue defendants' automobile liability insurance carrier for compensated economic losses, and if Mercogliano and his PIP carrier can both seek the payment of economic losses from the workers' compensation carrier -- it makes no sense that the legislative scheme would allow the workers'

9

compensation carrier to seek reimbursement from defendants' automobile insurance carrier.

The legislative policy underlying the no-fault system is to reduce the burdens placed on our automobile insurance system that have made insurance premiums unaffordable to many New Jersey residents. See N.J.S.A. 39:6A-1.1. The subrogation action that my concurring colleagues allow defeats "a legislative policy determination that losses resulting from work-related automobile accidents should be borne by the 'ultimate consumers of the goods and services in whose production they are incurred' as opposed to 'the automobile-owning public' in general." See Portnoff v. N.J. Mfrs. Ins. Co., 392 N.J. Super. 377, 383 (App. Div. 2007) (quoting Lefkin v. Venturini, 229 N.J. Super. 1, 12 (App. Div. 1988)).

Indeed, the reason that the workers' compensation system is given primary responsibility for covering economic damages for work-related vehicular accidents is to relieve the financial pressure on the automobile insurance system.

## III.

The relentless logic of the No Fault Act and successor enactments forbids a workers' compensation carrier from seeking reimbursement in a subrogation action, therefore reducing costly litigation and lowering

automobile insurance premiums.  Because Mercogliano was injured in the course of his employment, New Jersey Transit covered his economic losses. That result fulfilled the purpose of the no-fault system's collateral source rule, shifting the losses from the automobile insurance industry to workers' compensation.  See N.J.S.A. 39:6A-6.  Permitting New Jersey Transit to sue defendants and their automobile insurance carrier for the economic losses, as the concurrence does, shifts the costs right back to the automobile insurance system.  I therefore respectfully dissent.

Our task is to give life to the Legislature's policy choices.  If the concurrence has misconstrued the interplay between the no-fault system and the Workers' Compensation Act, as I believe it has, the Legislature has the power to correct the misinterpretation of its enactments.